UNITED AIRCRAFT CORPORATION (HAMILTON STANDARD DIVISION), Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 376, Docket 28490.

United States Court of Appeals Second Circuit.

Argued May 26, 1964.

Decided July 8, 1964.

Joseph C. Wells, Washington, D. C. (Winthrop A. Johns, Reilly & Wells, Washington, D. C., on the brief), for petitioner.

Melvin J. Welles, Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Lee M. Modjeska and William Wachter, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

LUMBARD, Chief Judge:

The question presented is whether trainees enrolled in the "Limited Production Machinist Program" instituted by the petitioner, United Aircraft Corporation, in its Hamilton Standard Division, located in Windsor Locks, Connecticut, were members of the bargaining unit represented by Lodge No. 743, International Association of Machinists. We find substantial evidence in the record to support the National Labor Relations Board's determination that the trainees were members of the bargaining unit and that the petitioner violated §§ 8(a) (5) and (1) in refusing to bargain with the union with regard to the working conditions of the trainees.

The union was certified in 1941 as the bargaining representative of the production and maintenance employees of United's Hamilton Standard Division. In their first collective bargaining agreement, negotiated in 1941, the parties described the bargaining unit as excluding "apprentices, trainees [and] students * * *." No mention has been made of trainees in the ten collective bargaining agreements entered into since that time.

Prior to 1952 the Hamilton Standard Division was located in East Hartford, Connecticut, on property contiguous to United's Pratt and Whitney Division. Some employees of both divisions attended a training school established by United in Hartford, some distance from the plants, and operated intermittently since 1941. These trainees were deemed outside the bargaining unit and were not represented by any union. No Hamilton Standard employees attended the train-

ing school subsequent to the end of World War II, and it appears that after 1942 no members of the production and maintenance bargaining unit attended the school.

In October 1962 the company posted a notice on its bulletin board announcing the establishment of a "Limited Production Machinist Program" to increase the qualified personnel in the Limited Production Department, which produces items in small quantities after development in the experimental department but prior to full production. The notice described a 22-week program, of approximately 15 weeks of classroom work and machine operation in the Machine School Training Area, which is set apart from the regular operational areas of the factory, plus 7 weeks of on-the-job training in the Limited Production Department. Preference was to be accorded the company's own employees, although enrollees were also to be accepted from without the company's work force. Those who satisfactorily completed the course were to be assigned permanent places in the Limited Production Department, the remaining trainees to be returned to their prior jobs, if available. Regular employees in the Limited Production Department are members of the bargaining unit represented by Lodge 743, as are other production employees to whom United gives on-the-job training.

Shortly after posting of the notice, Butler Seedman, president of the union, met with James Vandervoort, personnel manager of the company, who stated the company's position that enrollees in the training program would not be members of the bargaining unit and consequently would not enjoy the benefits of the collective bargaining agreement during their tenure as trainees. Seedman replied that he would have to consult with other union officials in order to present the union's position on the question. At a second meeting Seedman stated the union's position that trainees would be members of the bargaining unit and indicated that if the company commenced operation of the school the union would take all necessary steps to protect the rights of the employees. Seedman then wrote Vandervoort asking whether the company had changed its position, to which apparently there was no written reply. Thereafter, following the opening of the training school the union, on November 29, 1962, filed charges with the Board alleging violations by the company of § 8(a) (5) and (1).[1]

The company maintains that the history of its negotiations with the union indicates that trainees had been excluded from the production and maintenance workers bargaining unit and that in any event it has committed no unfair labor practices inasmuch as it refused to bargain with the union as the result of a good faith belief that the trainees were not properly members of the bargaining unit. We disagree with both propositions.

The exclusion of trainees from the 1941 collective bargaining agreement is of little significance in determining the parties' intentions with regard to the treatment of trainees. The 1941 program was conducted in East Hartford, at some distance from the factories, whereas the present program is conducted on the very premises where the members of the bargaining unit normally work. Moreover, the employees enrolled in the 1941 program were drawn from two divisions of United Aircraft—one unrepresented by any union—and returned to these separate divisions after the training period. By contrast, trainees in the Limited Production Machinists Program are drawn for the most part from the production and maintenance workers bargaining unit and in all likelihood

1. Section 8(a) provides:
"It shall be an unfair labor practice for an employer—
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 * * *
"(5) to refuse to bargain collectively with the representatives of his employees * * *."

will either return to their previous jobs or remain in the Limited Production Department, which likewise is represented by Lodge 743. Thus, in negotiating the 1941 agreement the parties were dealing with a significantly different training program.

That the subsequent collective bargaining agreements failed to mention trainees is explained by the fact that after 1941 no members of the bargaining unit attended the East Hartford training school and accordingly there was no occasion further to consider the problem. Thus we find little support for the company's claim that the union acquiesced in the exclusion of trainees from the bargaining unit. Indeed, as soon as the company made known its intention to establish a new training school, the union objected.

■ Employees enrolled in the new training program would seem most properly to be includible in the production and maintenance workers bargaining unit. The trainees for the most part come from and will return to production departments. They have a vital interest in the wages, hours and working conditions of the production workers. Moreover, the entire bargaining unit has a strong interest in the training program, for example, to see that wages are not undercut by those trainees who perform normal production work. In short, there is a strong community of interest between the trainees and the other members of the bargaining unit, see, e. g., N. L. R. B. v. Belcher Towing Co., 284 F.2d 118, 121 (5 Cir. 1960), and there is thus sufficient evidence in the record to support the Board's conclusion that the trainees are members of the production and maintenance employees bargaining unit.

■ That the company's refusal to bargain was undertaken in the good faith belief that the trainees were not members of the bargaining unit is of no consequence. See Old King Cole, Inc. v. N. L. R. B., 260 F.2d 530, 532 (6 Cir. 1958). The regular procedure for challenging the appropriateness of a bargaining unit is to refuse to bargain and then defend against an unfair labor practice charge on the ground that the unit is inappropriate. See, e. g., N. L. R. B. v. Burroughs Corp., 261 F.2d 463 (2 Cir. 1958). The challenge is ordinarily made in good faith as it was here.

The petition to review and set aside the Board's order is denied; the cross-petition for enforcement is granted.