**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MY STORE, INC., Respondent.**

No. 14770.

United States Court of Appeals Seventh Circuit.

April 7, 1965.

Rehearing Denied June 4, 1965.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter Giesey, Atty., NLRB, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Nancy M. Sherman, Atty., NLRB, for petitioner.

Matthew E. Murray, Chicago, Ill., Charles E. Bliss, Taylorville, Ill., Norman P. Jones, Springfield, Ill., John D. O'Brien, Chicago, Ill., Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Ensel, Jones & Blanchard, Springfield, Ill., Hershey & Bliss, Taylorville, Ill., for respondent.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order based on findings that respondent violated Sec-

tions 8(a) (1), (3) and (5) of the National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq. We decide that the order should be enforced.

Respondent My Store, Inc. is owned by Pasquo Podeschi and operates a supermarket employing about fifty persons in Taylorville, Illinois. Respondent's employees had never been organized until the United Retail Workers Union, at the request of one or more of the employees, began an organizational campaign in December 1962. Subsequently, at the union's petition, an election was ordered for February 21, 1963, and the union won. Unfair labor practice charges based on respondent's conduct prior to and in connection with the election were made by the union on February 26. These charges were not pressed by the union as the parties began negotiations toward a contract. The charges were subsequently dismissed for want of prosecution. Bargaining negotiations were unsuccessful and the union struck the plant on May 2. On May 8 the charges before us were filed. The hearing followed, resulting in the Board's decision, challenged here by respondent.

A review of the record and of the decision and order of the Board and the report of the trial examiner, reported at 147 N.L.R.B. No. 16, shows that the findings of the Board and the examiner are supported by substantial evidence on the record as a whole. We cannot, in our limited power of review, say that the Board should have adopted respondent's version, instead of the General Counsel's, of the facts or the inferences to be drawn therefrom, or substitute contrary findings where the record supports the Board's findings of fact. Saginaw Furniture Shops, Inc. v. N. L. R. B., 343 F.2d 515, 7th Cir., Feb. 15, 1965.

■■ The Board did not err in finding that respondent violated Secs. 8(a) (1) and (3) of the Act by threats, intimidation and rescission of benefits, all aimed at interfering with the employees' organizational and bargaining rights. After Podeschi was notified by the Board that his employees had signed author-

ization cards and that an election would be held, Podeschi, his son and another employee interrogated the employees about signing the cards and some were asked about who was behind the union effort. We agree with respondent that interrogation is not unlawful per se, Frank and Sullivan and Company, 133 N.L.R.B. 726, 727 (1961); Blue Flash Express, Inc., 109 N.L.R.B. 591, 593 (1954), but that rule is inapplicable here, where the interrogation was in an atmosphere of animosity toward the union on the part of Podeschi, directed toward discovering identity of the union organizers, and was in fact coercive. N. L. R. B. v. Mid-West Towel & Linen Service, Inc., 339 F.2d 958 (7th Cir. 1964); N. L. R. B. v. Economy Food Center, Inc., 333 F.2d 468, 470 (7th Cir. 1964).

The day following verification by the Board's Regional Director of the authenticity of the employees' signatures on the authorization cards, determined by comparison with the signatures obtained by respondent from the employees, Podeschi called the employees together and angrily lectured them against the union and for denying when interrogated previously that they had signed the authorization cards. Podeschi then told them that certain privileges were being withdrawn, that he could eliminate fifteen jobs if he wanted to, and that he had an offer to sell the store. The withdrawn benefits were not themselves very substantial, but this conduct was an element to be considered in the totality of unlawful interference with Sec. 7 rights in violation of Secs. 8(a) (1) and (3).

We think also that the Board did not err in finding Sec. 8(a) (3) and (1) violations in that respondent discriminatorily cut the hours of employment of eight union adherents. There is no question that the hours of these employees were cut. The only question was whether the cutting was because of economic reasons recognized by the union, as respondent contends, or because the employees affected were singled out as object lessons because of their union activity. We find no persuasive showing in favor of respondent in its oral testimony and graphs of economic necessity for the reductions in hours immediately following the organizational movement, or that there was mere coincidence in the fact that those whose hours were cut were known or suspected by Podeschi of being the leaders of the movement.

Respondent contends that the Board could not base findings of 8(a) (1) and (3) violations on evidence of respondent's conduct prior to February 26, 1963, or use such conduct as evidence of respondent's bad faith in bargaining because of the union's "agreement to drop" the original pending unfair labor practice charges and the dismissal of the complaint by the Board's Regional Director. The Board's finding was that the union had merely agreed to hold the charges "in abeyance" in order "to clear away all extrinsic issues and pave the way for productive bargaining * * *" and the complaint was dismissed not on the merits, but solely for want of prosecution. But even assuming, though not deciding, that there was an agreement by the union to drop the charges, the Board could not be precluded from hearing the complaint filed on May 8, 1963. A hearing before the Board is in furtherance of a public policy, not to vindicate a private right, N. L. R. B. v. General Motors Corp., 116 F.2d 306, 311–312 (7th Cir. 1940), and the "judicial concept of estoppel" may not be invoked to frustrate the purposes of the Act. Wallace Corp. v. N. L. R. B., 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216 (1944); N. L. R. B. v. T. W. Phillips Gas & Oil Co., 141 F.2d 304 (3d Cir. 1944); cf. N. L. R. B. v. Fitzgerald Mills Corp., 313 F.2d 260, 265 (2d Cir.) cert. denied 375 U.S. 834, 84 S.Ct. 47, 11 L.Ed.2d 64 (1963).

There is substantial evidence in the record to support the Board's finding that respondent violated Secs. 8(a) (5) and (1) by failing to bargain in good faith with the certified bargaining agent of its employees. In reaching this determination the Board was entitled to take into consideration, among other things, the animosity toward the union displayed

by respondent before the negotiations began,[1] Podeschi's repeated claim that a reply to his letter to Washington would vindicate his claim that the part-time employees should not have been permitted to vote and that the election was invalid,[2] his refusal to agree to more than a one year contract on grounds that another election would be held in a year and the union would be out, his refusal to bargain on wages based on job classifications on the ground that there were none, when respondent's records showed otherwise,[3] the failure and delay of respondent in supplying requested information [4] or to make a counter-offer for more than four months, and the lack of any substantial agreement on major issues after protracted negotiations. There is no merit in respondent's contention that the Board's reliance on the lack of agreement amounts to passing on the merits of the demands and putting pressure on respondent to accede to the union demands. Lack of agreement was merely one element among many considered as bearing on the issue of good faith. An employer is not, and may not be, required to yield on positions fairly maintained, but it may not use those positions as a "cloak" behind which to conceal a purposeful strategy to give the union a "runaround while purporting to be meeting with the Union for purpose of collective bargaining." N. L. R. B. v. Herman Sausage Co., 275 F.2d 229, 232 (5th Cir. 1960); N. L. R. B. v. Southwestern Porcelain Steel Corp., 317 F.2d 527 (10th Cir. 1963).

We find substantial evidence to support the findings of the Board that the strike which began on May 2 was at least in part a result of respondent's unfair labor practices and that the union made an unconditional offer on behalf of the strikers to return to work. The unfair labor practices (described as such) prior to the beginning of negotiations and the conduct of respondent during the course of negotiations were related to the union members at a meeting and they voted unanimously to strike. That union publicity during the strike gave as the reason for it respondent's refusal to grant certain economic demands is not conclusive that the strike was solely an economic one. Since respondent failed to discharge replacements and take back the strikers, it violated Sec. 8(a) (3), and the Board's order of reinstatement with back pay was justified. That there may also have been economic reasons for the strike did not deprive the strikers of their rights as unfair labor practice strikers, N. L. R. B. v. Fitzgerald Mills Corp., 313 F.2d 260, 269 (2d Cir. 1963).

Enforcement ordered.

---

1. N. L. R. B. v. Southwestern Porcelain Steel Corp., 317 F.2d 527 (10th Cir. 1963); N. L. R. B. v. Fitzgerald Mills Corp., 313 F.2d 260, 264 (2d Cir. 1963).

2. Respondent had made no objection to the part-time employees being included in the unit for the purpose of the consent election, and even a good faith belief that the part-time employees were not properly part of the unit is immaterial in determining whether the refusal to bargain was an unfair labor practice. United Aircraft Corp. (Hamilton Standard Division) v. N. L. R. B., 333 F.2d 819 (2d Cir. 1964), cert. denied 85 S.Ct. 893 (March 1, 1965); Taylor Forge & Pipe Works v. N. L. R. B., 234 F.2d 227 (7th Cir.), cert. denied 352 U.S. 942, 77 S.Ct. 265, 1 L.Ed.2d 238 (1956).

3. "Good-faith bargaining necessarily requires that claims made by either bargainer should be honest claims." N. L. R. B. v. Truitt Mfg. Co., 351 U.S. 149, 152, 76 S.Ct. 753, 755, 100 L.Ed. 1027 (1956).

4. N. L. R. B. v. Truitt Mfg. Co., 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956); N. L. R. B. v. Fitzgerald Mills Corp., 313 F.2d 260 (2d Cir. 1963).