464 F.2d 698
 68 Lab.Cas. P 12,788
 EMERALD MAINTENANCE, INC., Petitioner-Cross Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.
PUBLIC SERVICE, PRODUCTION AND MAINTENANCE EMPLOYEES LOCAL
UNION NO. 1057, Affiliated with The Laborers'
International Union of North America,
AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 71-1402, 71-1591.
 United States Court of Appeals,
 Fifth Circuit.
 June 19, 1972.
 
 John M. Bee, New Orleans, La., Frank S. Manitzas, San Antonio, Tex., Glenn E. Bandelin, Sandpoint, Idaho, for petitioner, Emerald Maintenance, Inc.; Clemens, Knight, Weiss & Spencer, San Antonio, Tex., Bandelin & Swanstrom, Sandpoint, Idaho, of counsel.
 Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Clifford Potter, Director, Region 23, N. L. R. B., Houston, Tex., Nancy M. Sherman, N. L. R. B., Washington, D. C., Eugene G. Goslee, Acting Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Ronald I. Tish, Atty., N.L.R.B., for respondent.
 Jules Bernstein, Washington, D. C., Marvin Menaker, Dallas, Tex., Robert J. Connerton, Arthur M. Schiller, Washington, D. C., for petitioner-intervenor Union.
 Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 This case was argued and submitted to us before the Supreme Court handed down its decision in NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). Burns disposes of the most troublesome issues in the present case. We see no error in the Board's disposition of the issues not disposed of by Burns. The net result is that we enforce the Board's order requiring Emerald Maintenance to bargain with the incumbent union but deny enforcement of the portion of the Board's order requiring restitution of certain benefits of which the employees were deprived by allegedly unilateral action on the part of Emerald.
 
 I.
 
 2
 On April 1, 1969, the Bartlett Co. and Rice Cleaning Service undertook contracts to handle the assignment of base housing and the maintenance of roads and grounds at Laredo (Texas) Air Force Base. Both the Bartlett and Rice contracts were for one year. On March 31, 1969, Local Union No. 1057 of the Public Service, Production, and Maintenance Employees Union executed substantially identical collective bargaining agreements with Bartlett and Rice. The agreements were to expire eighteen months thereafter, on September 30, 1970, exceeding the term of the Rice and Bartlett contracts with the Government by six months. The agreements contained a Union recognition clause, a checkoff provision, and a clause in which the companies agreed to permit the union to furnish all classes of employees set forth in the bargaining agreement. The agreements also contained important wage and hour provisions; provisions governing holidays and vacations; and a "successors and assigns" clause. In addition, each agreement provided for substantial increases in employee benefits, including wages, to take effect on April 1, 1970, the day after the Rice and Bartlett contracts with the Air Force expired.
 
 
 3
 In early January 1970, the Government invited bids for the service contracts then held by Rice and Bartlett. On January 12, the Union notified all interested bidders that it was the certified bargaining agent for the employees involved, that the collective bargaining agreements "contain[ed] a successor clause which shall make them binding upon any successor of the present contractors", and that it expected the successful bidder "to honor the terms of the Union agreement."
 
 
 4
 Having submitted its bid in January 1970, on March 18, 1970, the Emerald Maintenance Company was awarded both the maintenance contract previously held by Rice as well as the billetting contract held by Bartlett. Over the protest of the union business manager, Emerald refused to recognize the union when it took over the work, under its contract, on April 1, 1970. Union members were required to apply for employment as new applicants for jobs; Emerald would not recognize Union referral slips which carried the blessing of the prior collective bargaining agreements. As it turned out, however, the work force hired by Emerald was comprised in large part of Rice and Bartlett employees. On April 1, the company employed 47 persons for its grounds maintenance operation; 37 of these employees had been Rice employees and dues paying members of the Union as well. The grounds maintenance crew was increased to 86 by early May, and 63 of that number were former employees of Rice and union members. Emerald also hired "substantially the same employees" as were employed under the Bartlett contract to perform the base housing services contract. As a whole, then, of the 100 individuals in Emerald's work force by early May of 1970, about 76 had been employees of either Bartlett or Rice and 71 were dues paying union members.
 
 
 5
 On May 5 or May 6, several weeks after the commencement of Emerald's contract, the company notified the employees of their "rights and privileges" with the Company. The thrust of the message was that Emerald would not provide terms of employment as favorable as those specified by the Bartlett and Rice contracts-including modifications of the prior contractual specifications on holidays, vacations, seniority, and grievances. In addition, the wage scale actually paid by Emerald did not reflect the wage increase scheduled to take place on April 1, 1970, under the Bartlett and Rice agreements. Instead, the company adhered to a wage schedule geared to the prevailing rates in effect at the time bids were advertised.
 
 
 6
 On the basis of these facts, the Board found that Emerald was a "successor" employer to Rice and Bartlett. The Board found that Emerald violated Sections 8(a) (5) and 8(a) (1) of the National Labor Relations Act by refusing to recognize and bargain with the Union, and by unilaterally changing its employees' conditions of employment after April 1, 1970. The Board found, however, that Emerald's failure to honor the terms of the contracts between the Union and Rice and Bartlett did not constitute a violation of the Act, as a result of Emerald's status as a government services contractor. The board ordered the company to bargain with the union and to make whole the employees for any losses suffered by reason of "unilateral" changes made in the terms and conditions of their employments.
 
 
 7
 The cause is before this Court under Section 10(f) of the Act. In No. 71-1402, Emerald protests the Board's holding that it is a successor employer obligated to bargain with the union and to make whole the employees for losses resulting from unilateral changes. In No. 71-1591, the union seeks reversal of the Board's holding that the company is not obligated to honor the collective agreements previously negotiated with Emerald's "predecessor" employers.
 
 II.
 
 8
 Burns compels this Court to hold that the union's petition for review cannot be sustained. First, a successor employer in the position of Emerald is not bound by the substantive provisions of a collective bargaining agreement, negotiated by a predecessor, to which the successor has not agreed or the obligations of which are not assumed. Moreover, Burns requires us to deny enforcement of the Board's order requiring Emerald to make restitution of economic benefits withheld or denied because of "unilateral" changes in the terms of employment previously agreed to by Rice and Bartlett. In the words of the Supreme Court, "It is difficult to understand how [Emerald] could be said to have changed unilaterally any pre-existing term or condition of employment without bargaining when it had no previous relationship whatsoever to the bargaining unit and, previous to [April 1, 1970] no outstanding terms and conditions of employment from which a change could be inferred." 406 U.S. at 294, 92 S.Ct. at 1585. Here, as in Burns, it was not clear that a majority of Emerald employees were union members until after the work force had been assembled. Consequently, there is no occasion to treat Emerald's behavior as one of those "instances in which it is perfectly clear that the new employer plans to retain all of the employees in the unit and in which it will be appropriate to have him initially consult with the employees' bargaining representative before he fixesterms." Id.
 
 III.
 
 9
 Burns holds, however, that when a bargaining unit remains unchanged and a majority of the employees hired by the new employer are represented by a recently certified bargaining agent, it is proper for the Board to require the new employer to bargain with the incumbent union. Emerald cannot, of course, contest the Board's order to bargain under the "majority of union members" rule. It does, however, assert two reasons why it should not be required to bargain with the union.
 
 
 10
 First, Emerald argues that "there are significant differences in the operations of Emerald at Laredo Air Force Base and in the work involved and services performed under Emerald's government contracts, as opposed to the operations, the work and the service performed by Rice and Bartlett." Emerald points to certain specific differences between the work previously performed by Rice and the work Emerald is obligated to perform. We are not persuaded. The record demonstrates in no uncertain terms that "[f]or all practical purposes there was continuity in the nature and functions of the same employing industry." NLRB v. Auto Ventshade, 5 Cir. 1960, 276 F.2d 303, 306; NLRB v. Zayre Corp., 5 Cir. 1970, 424 F.2d 1159, 1162-1164; Valleydale Packers, Inc., 1967, 162 NLRB 1486, 1490, enf'd per curiam, 5 Cir. 1968, 402 F.2d 768, cert. den., 396 U.S. 825, 90 S.Ct. 66, 24 L.Ed.2d 75. An overview of the facts in this case leaves no doubt that the Board's finding of continuity is supported by substantial evidence in the record as a whole, most of all by the strikingly high number of Rice employees who became Emerald employees after April 1, 1970. William J. Burns International Detective Agency v. N. L. R. B., 2 Cir. 1971, 441 F.2d 911, 915; Maintenance, Inc., 1964, 148 NLRB 1299, 1303.
 
 
 11
 Second, Emerald questions the appropriateness of the bargaining unit covered by the Rice and Bartlett collective bargaining agreements. When the union was certified in 1965, Emerald argues, it was certified to represent all employees (excluding guards, watchmen, and supervisors as defined by the NLRA) performing service work at Laredo Air Force Base. At the time of certification, a firm called Defense Contractors, Inc. held a contract to perform not only the base housing and roads and grounds maintenance work covered by the Rice and Bartlett contracts, but also motor pool, photo lab, food services, and refueling service functions. Thus the 1965 certification was intended to cover all service employees in a single collective bargaining unit. Only when the service contracts were awarded to different firms did the union enter into separate agreements with individual contractors-such as Rice and Bartlett, in the period from April 1, 1969, to March 31, 1970.
 
 
 12
 Thus Emerald argues that the execution of multiple collective agreements covering only segments of the originally certified unit amounts to an improper alteration or division of the larger unit originally determined by the Board to be an appropriate unit. This division, says Emerald, justified its refusal to recognize and bargain with the union.
 
 
 13
 Both the trial examiner and the Board rejected Emerald's contention that the "fragmented" unit of billeting and maintenance employees was inappropriate. We agree with the Board. At the time Emerald began execution of its Government contract, the large majority of employees in the unit were union members. The employees in the Emerald unit, approved by the Board, constitute a cohesive group of employees who are separately supervised, who have a separate place of work, who are the only Emerald employees to work on the service contracts with the Air Force. The unit employees had a separate bargaining history of one year. Only the prior certification of the Defense Contractors unit provides Emerald with even a colorable argument that the Board misused its broad discretion in establishing appropriate bargaining units. NLRB v. Fidelity Maintenance and Construction Co., 5 Cir. 1970, 424 F.2d 707, 709; NLRB v. Baton Rouge Water Works Co., 5 Cir. 1969, 417 F.2d 1065, 1066-1067.
 
 
 14
 We find no abuse of that discretion. The Board has taken the practical view that neither Rice nor Bartlett, nor Emerald for that matter, was in a position to bargain with respect to the entire unit as originally certified in 1965. The later companies were performing only part of the services performed by Defense Contractors in 1965, and other firms were performing the remainder of the original Defense Contractor responsibility. As the Board points out, post-certification division of the work meant that bargaining as to the entire 1965 unit could take place only when established consensually. Publishers' Assn of New York City v. NLRB, 2 Cir. 1966, 364 F.2d 293, 294-296. Nothing in the record suggests that Emerald desired or advocated multiemployer bargaining.
 
 
 15
 We conclude that the Board's approval of the Emerald bargaining unit was well within its discretion. Because Emerald did not perform all the functions involved in the original certification, the several Labor Board decisions cited by Emerald do not alter this conclusion. Compare Victor Mfg., 1961, 133 NLRB; Central Truck Lines, 1952, 98 NLRB 374; Calaveras Cement, 1950, 89 NLRB 378. Finally, we find no evidence that Emerald expressed any doubt of the unit's appropriateness in rejecting the Union's bargaining demands. Even if it had, a good faith doubt of the unit's appropriateness would not serve as a defense to the company's refusal to bargain. NLRB v. My Store Inc., 7 Cir. 1965, 345 F.2d 494, 498 n. 2. "The regular procedure for challenging the appropriateness of a bargaining unit is to refuse to bargain and then defend against an unfair practice charge on the ground that the unit is inappropriate." United Aircraft Corp. (Hamilton Standard Division) v. NLRB, 2 Cir. 1964, 333 F.2d 819, 822.
 
 
 16
 For the reasons stated, the Board's order is enforced, except for paragraph 2(b) requiring Emerald to "[m]ake whole all of the employees in the bargaining unit for economic benefits withheld from them by the Respondent in the manner set forth under 'The Remedy'."