**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LEWISBURG CHAIR & FURNITURE COMPANY, Respondent.**

**LEWISBURG CHAIR & FURNITURE COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 11714, 11761.**

United States Court of Appeals Third Circuit.

Argued Jan. 17, 1956.

Decided Feb. 21, 1956.

James A. Ryan, Washington, D. C. (Theophil C. Kammholz, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Atty., N. L. R. B., Washington, D. C., on the brief), for National Labor Relations Board.

John F. Dumont, Little Falls, N. J. (Joseph M. McNerney, McNerney, Page & Vanderlin, Williamsport, Pa., on the brief), for Lewisburg Chair & Furniture Co.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is a labor board case. The National Labor Relations Board is petitioning for enforcement of an order made against Lewisburg Chair and Furniture Company. The Company, in turn, petitions the court to set aside the order.

■ There is no new point of law in this case. The questions involved are fact questions only. That does not relieve us of responsibility for examination of the record and an appraisal of the arguments made both for enforcement and setting aside. In this we are guided

by the Supreme Court's decision in Universal Camera Corp. v. N. L. R. B., Feb. 26, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. See also, N. L. R. B. v. Universal Camera Corp., 2 Cir., July 13, 1951, 190 F.2d 429.

■ There is no basis in the long record (the appendix submitted is 652 printed pages) for a claim of bias on the part of the trial examiner. The hearing was extended. Each side was given full opportunity for examination and cross-examination. The examiner was prompt in his rulings and completely impartial. When the lawyers began wrangling he got the hearing back on its track again. The feeling that the trier of the fact, be he baseball umpire, trial judge or hearing officer, is biased is not uncommon for one against whom decision has gone. This case presents nothing more than that on this point.

The entire controversy centers around the discharge of two employees named Moyer and Snyder. These men were discharged by the Company's management upon the alleged ground that they had falsified their production records. It was not disputed that if they had done so, this was a proper ground for their discharge. The point was also made and met by the trial examiner that the discharge would equally have been justified had the manager of the respondent's plant had a reasonable and honest belief that the records had been so falsified whether they were or not.

The case for the board's general counsel was predicated upon the theory that while dishonesty was the alleged reason for the discharge of Moyer and Snyder, the real reason was their prominent and long-continued union activity. These men had been among a group which had sponsored an attempt to unionize the company's plant. There had been three elections, two under the auspices of the Labor Relations Board, in 1953. The vote in each case was against unionization. After this decisive defeat, however, Moyer and Snyder continued to be active for the union. They passed out union newspapers at the gate of the plant; they busied themselves in getting Union help for three employees who had been laid off. There was plenty of evidence of the union activity and there was plenty of evidence also that company officials knew of it although there was some attempt on the part of witnesses for the company to minimize management's knowledge in this respect.

The company presented a strong and well-prepared case. It showed a plant history of no opposition to unions. It showed earlier instances in which men had been discharged for falsification of their records. It presented witnesses who denied categorically much of the testimony presented by the other side.

The case got down to the point where the trier of the fact had to decide whether he believed the witnesses for one side or the other. There was a perfectly consistent story told by Moyer, Snyder and a former foreman for the company named Yost. If this story was accepted, these men had been warned by at least two foremen that the company was looking for a chance to discharge them because of their long-continued and very active campaign for the union. The alleged falsification of their production records was explained by them in a perfectly satisfactory way if their story was to be accepted. It was that the official of the company in charge of these records had directed them to handle "split orders," i. e., those coming through in more than one batch, in a given way. This direction, they said, they followed. The story of these three witnesses made up a perfectly consistent case. If they were believed the company had been guilty of an infraction of the statute. 49 Stat. 452, § 8(1) and (3) (1935), as amended, 29 U.S.C.A. § 158(a) (1) and (3). On the other hand, if their story was rejected, the case for the other side was equally logical. Then it would have been found that the men were discharged, not for any union activity, but because they had attempted to cheat the company.

The trial examiner in a very full report analyzed all the testimony. He came

to the conclusion that the testimony of Yost, Moyer and Snyder was to be accepted and he disbelieved much of the testimony offered on behalf of the company. Two members of the board agreed with him completely; one acquiesced because he saw no basis for overturning the examiner's findings of fact; two members dissented. We shall not repeat the testimony further because the whole report will be found in 112 N.L. R.B. No. 90 (1955).

That there is, on the whole record, ample evidence to support the conclusion reached by the trial examiner and the majority of the board we have no doubt. Whether we would have reached the same conclusion on the evidence is irrelevant. Questions of credibility of witnesses have to be resolved in litigation but in labor cases this court is not the place where such resolving takes place.

The board's petition for enforcement will be granted, and the company's petition to set aside the order will be denied.