**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KEYSTONE FLOORS INC., d/b/a Keystone Universal Carpet Co., Respondent.**

No. 13669.

United States Court of Appeals Third Circuit.

Argued Feb. 20, 1962.

Decided July 10, 1962.

Marcel Mallet-Prevost, Washington, D. C. (Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Samuel M. Singer, Julius G. Getman, Attys., National Labor Relations Board, on the brief), for petitioner.

Allen H. Berkman, Pittsburgh, Pa. (David Glick, Glick, Berkman & Engel, Pittsburgh, Pa., on the brief), for respondent.

Before GOODRICH, KALODNER and GANEY, Circuit Judges.

KALODNER, Circuit Judge.

Two points are presented by this petition for enforcement of an order of the National Labor Relations Board ("Board"): [1]

First: were respondent's salesmen its employees or independent contractors;

Second: did the evidence sustain the Board's findings that respondent engaged in unfair labor practices in violation of Section 8 of the National Labor Relations Act, as amended.[2]

The facts critical to the first issue, as evidenced by the record and found by Board, may be summarized as follows:

Respondent, Keystone Floors, Inc., d/b/a Keystone Universal Carpet Co. ("Keystone"), is engaged in the retail sale and installation of home carpeting in Pittsburgh, Pennsylvania. Written agreements entitled "Dealer's Agreement Form", entered into by Keystone with its salesmen, assign a specific territory to each salesman and provide that he is "an independent agent and not subject to control, rights or privileges of an employee". These agreements are terminable at will by either party. Salesmen are not permitted to handle products of any other company.

The agreements provided for a weekly $100.00 "draw" (drawing account) against a 10 per cent commission basis plus bonuses on excess of $1,000.00 weekly business. The 10 per cent commission basis was subsequently reduced to 7 per cent by unilateral action of Keystone, without even consulting its salesmen. Drawing accounts were likewise substantially reduced in some instances.

No deductions are made by Keystone from its salesmen's compensation for social security, income tax withholding, etc. The salesmen do not receive vacations with pay.

Each Monday morning the salesmen are required to attend a meeting of the entire sales force, presided over by Keystone's sales manager. At these meetings, "leads", obtained through extensive newspaper advertising, are distributed and the salesmen are given information concerning sales techniques and the patterns that have been added or discontinued.

Each morning between 8 and 9 a.m., except Mondays, Keystone's sales manager telephones the salesmen at their homes to notify them of the leads that have been obtained in their respective territories. The salesmen schedule their workday by contacting the prospective

---

**1.** The Board's Decision and Order are reported at 130 N.L.R.B. 4 (1961).

**2.** 29 U.S.C.A. § 158.

customers and setting up appointments at the customers' homes.

The salesmen are required to work a minimum of eight hours a day and to put in a full workweek. They are required to call upon all leads in their territory which are furnished by Keystone. Although most of their working time is spent in following up these leads, they are expected to spend their remaining time in door-to-door canvassing. They are required to report regularly on what action they have taken with respect to their leads and the extent of their canvassing. They must telephone the office each afternoon. Unsold leads are followed up by the sales manager or one of Keystone's supervisors to ascertain whether the salesmen have called on the customers and why sales were not made. The supervisors also train new salesmen by accompanying them for about a week, teaching them how to approach customers and conclude and write up sales.

In calling on prospective customers the salesmen use their own automobiles, defraying the cost of operation, including gasoline and insurance. Keystone furnishes the salesmen with sample kits, for which they pay a deposit of $25.00 at the rate of $5.00 per week for their first five weeks with Keystone. The deposit is refunded when the kit is returned.

The selling price of the carpeting is fixed by Keystone and may not be varied by the salesmen. When a sale is made, the order is written up on Keystone's order sheets, and the salesman signs as "salesman". All orders are subject to approval by Keystone, which also handles any credit arrangements. Cash received by salesmen is paid over to Keystone; and when a customer pays by check the check is made payable to Keystone. When orders cannot be filled as written, Keystone contacts the customers directly and makes the necessary changes without consulting the salesmen. If the change results in a higher sales price, the salesman's commission is still based on the original order, but if the sales price is lowered, the commission is reduced accordingly. Installation of the carpeting and customer complaints are not handled by the salesmen.

On the facts as stated, the Board adopted the Trial Examiner's Intermediate Report determination that Keystone's salesmen "are employees, not independent contractors."

Unless Keystone's salesmen are "employees" within the meaning of the Act, they are not protected by the unfair labor practice provisions. Section 2(3) of the Act, as amended in 1947,[3] provides that the term "employee" shall not include "any individual having the status of an independent contractor." The parties are in agreement that the status of the salesmen is to be determined by the common law test of the "right to control". National Labor Relations Board v. Nu-Car Carriers, Inc., 189 F.2d 756, 757 (3 Cir. 1951), cert. den. 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687; National Labor Relations Board v. Phoenix Mutual Life Insurance Co., 167 F.2d 983, 6 A.L.R.2d 408 (7 Cir. 1948), cert. den. 335 U.S. 845, 69 S.Ct. 68, 93 L.Ed. 395; Radio City Music Hall Corp. v. United States, 135 F.2d 715, 717 (2 Cir. 1943). As Judge Learned Hand succinctly stated in the latter case:

> "The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said * * *."

In Phoenix Mutual Life Insurance Co., supra, the rule was thus stated at page 986, of 167 F.2d:

> " * * * the employer-employee relationship exists when the person for whom the work is done has the right to control and direct the work, not only as to the result accomplished by the work, but also as to the details and means by which that result is accomplished * * *."

3. 61 Stat. 137, 29 U.S.C.A. § 152(3).

In the instant proceeding factors found to exist by the Trial Examiner and the Board, establish that in the application of the "right to control" test it was correctly determined that Keystone's salesmen are its employees and not independent contractors.

▮ The factors adverted to may be summarized as follows: the salesmen work through leads that are obtained and furnished by Keystone; they are required to follow up all leads in their territory and to report regularly on their activities; they are required to work a minimum number of hours a day and to put in a full workweek; they must attend weekly sales meetings; they are trained by Keystone's supervisors; they are not permitted to handle products of any other company; they do not hire persons to work under them; Keystone keeps close check on what they are doing; Keystone unilaterally makes changes in the rate and method of compensation. While no single factor is controlling, we think that all these factors in combination, place Keystone's salesmen in the category of employees.

Keystone stresses the fact that the written agreements with its salesmen provide that the salesman is "an independent agent and not subject to control, rights or privileges of an employee." While this language is a factor to be considered, we do not regard it controlling in light of the working relationship between Keystone and its salesmen.

On the score of the second issue stated at the outset of this opinion, the Board found that Keystone discriminatorily discharged five salesmen because of their union activities; that it unlawfully refused to bargain with the bargaining representative of its salesmen; and that it otherwise interfered with, restrained, and coerced its salesmen in the exercise of their rights under the Act. Keystone challenges these findings, contending that (1) the five salesmen voluntarily terminated their association with Keystone "for their own business considerations", and (2) the refusal to bargain was based on Keystone's belief, in "good faith", that its salesmen were independent contractors.

▮ Keystone makes much of the fact that three of the salesmen established their own carpet business approximately a month after leaving Keystone as evidence of their voluntary termination. On that score the Trial Examiner specifically made the following finding, which is supported by the evidence:

"Although these employees established this business [their own] in March 1960, this was not the reason for their leaving Respondent's employ. The reason, as herein found, was that they were discharged."

With respect to the issue as to whether the terminations of the salesmen were voluntary or involuntary we need only say that the record affords ample evidence to support the conclusions reached by the Trial Examiner and the Board. "Questions of credibility of witnesses have to be resolved in litigation but in labor cases this court is not the place where such resolving takes place." National Labor Relations Board v. Lewisburg Chair & Furn. Co., 230 F.2d 155, 157 (3 Cir. 1956).

▮ As to Keystone's contention that it acted in "good faith" in refusing to bargain with its salesmen since it believed them to be independent contractors, the Trial Examiner and the Board, based on what we find to be ample evidence, made a finding to the contrary. Moreover, as the Board stated at page 17 in its Decision and Order, 130 N.L.R.B. 4:

"Assuming that Respondent [Keystone] did have a good faith doubt that its salesmen were not employees, but independent contractors, this is a question that Respondent properly could have placed before the Board in a representation hearing for resolution. Instead, Respondent immediately resorted to tactics designed to undermine the Union and to thwart the organizing activities of its employees as evidenced by the discriminatory discharges and the

**564**

other acts of interference, restraint and coercion in which Respondent engaged. Such conduct is manifestly inconsistent with any claim that Respondent acted in good faith when it refused to recognize and bargain with the Union."

It is settled that good faith is not available as a defense to a charge of refusal to bargain where refusal is based upon an erroneous view of the law, Old King Cole, Inc. v. National Labor Relations Board, 260 F.2d 530 (6 Cir. 1958), and assuming that Keystone acted in good faith that defense is not here available to it.

For the reasons stated the Board's petition for enforcement will be granted.

Judge Goodrich participated in the consideration of this case but died prior to the filing of this opinion.