KINGSBURY ELECTRIC COOPERA-
TIVE, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 17187.

United States Court of Appeals
Eighth Circuit.

July 3, 1963.

J. B. Shultz of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., made argument for petitioner and Paul R. Green, of Green & Green, De Smet, S. D., were with them on the brief.

Warren M. Davison, Atty., N. L. R. B., Washington, D. C., made argument for respondent and Stuart Rothman, Gen. Counsel and Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Paula Omansky, Atty., N. L. R. B., Washington, D. C., were with him on the brief.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and YOUNG, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This case is before this court upon petition of Kingsbury Electric Coopera-tive, Inc., (Kingsbury), to review and set aside an order of the National Labor Relations Board issued September 17, 1962, reported at 138 NLRB —— (No. 63). The Board in its answer requests enforcement of its order. The alleged unfair labor practices occurred within this circuit. This court has jurisdiction under § 10(e) and 10(f) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.

The Board, acting upon a complaint filed by Local No. 426 IBEW, found Kingsbury violated § 8(a) (1) of the Act by interrogating its employees about their union affiliations; by threatening them with economic reprisal if they voted for the Union; and by granting a wage increase for the purpose of frustrating the organizing effort of its employees. The Board further found that the petitioner violated § 8(a) (1) and (5) of the Act by refusing to bargain collectively with the Union following its certification. The Board ordered Kingsbury to cease and desist from the unfair labor practices found. Affirmatively, the order directs Kingsbury to bargain collectively with the Union upon request and to post appropriate notices.

Kingsbury, a South Dakota corporation, is a public utility engaged in the distribution of electricity to its customers in the DeSmet, South Dakota, vicinity. Most of the customers are farm and residential users but some are commercial users. All customers are located in South Dakota. Kingsbury generates no electricity but acquires its power from East River Electric Power Cooperative owned by petitioner and 20 other electric cooperatives, all of which are located in South Dakota except for one located in Minnesota. East River generates no electricity but operates a distribution system which supplies Kingsbury and other members. It acquires its power almost entirely from the Bureau of Reclamation.

The Bureau of Reclamation operates a system of generating and transmission facilities which covers part of a six-state area including South Dakota. Most of

the power is derived from four U. S. Corps of Engineer hydroelectric power dams on the Missouri River. The only South Dakota generating plant is located at the Fort Randall Dam. Supplemental power is purchased from private utilities such as Nebraska Power System and Montana-Dakota Utilities Company.

Organizational activities among Kingsbury's line crew employees, an appropriate bargaining unit, commenced on March 31, 1961, when five or six such employees attended a meeting and signed union authorization cards. A representation election was held on May 16, which the Union won. The Union was certified as the exclusive bargaining agent of the line crew employees on May 26, 1961. The unfair labor practices charged occurred at or near the time these organizational activities were in progress. Kingsbury's principal attack here is upon the Board's jurisdiction but the findings of unfair labor practices are also challenged.

■ The Board's statutory jurisdiction over unfair labor practices by Kingsbury cannot be seriously challenged. Federal labor legislation, encompassing as it does all industries affecting commerce, applies to a privately owned public utility whose business activities are carried on wholly within a single state. Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emp. of America, Div. 998 v. Wisconsin Board, 340 U.S. 383, 391, 71 S.Ct. 359, 95 L.Ed. 364. See Sioux Valley Empire Electric Ass'n, 122 NLRB 92, 94.

In N. L. R. B. v. Reliance Fuel Corp., 371 U.S. 224, 226, 83 S.Ct. 312, 313–314, 9 L.Ed.2d 279, the Supreme Court states:

"This Court has consistently declared that in passing the National Labor Relations Act, Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause."

The evidence discloses that Kingsbury received an inflow of goods in interstate commerce of over $82,000 in 1960. The Trial Examiner excluded from consideration all such expenditures above $28,-337.74, holding such latter figure was a direct inflow expenditure entitled to consideration on the jurisdiction issue. The remaining expenditures were excluded upon the basis that they were nonrecurring capital expenditures.[1] Such determination is not challenged here.

The gist of Kingsbury's argument is that the Board has departed from its self-imposed jurisdictional limitations. Such limitations are fixed by the Board to conserve its resources and to promote the prompt handling of labor cases. See N. L. R. B. v. Guernsey-Muskingum Electric Co-op., Inc., 6 Cir., 285 F.2d 8, 10; The Greenwich Gas Company and Fuels, Inc., 110 NLRB 564.

The current self-imposed limitations were established in 1958 by Sioux Valley Empire Electric Ass'n, 122 NLRB 92, 94, as follows:

"The Board has decided that it will assert jurisdiction over all public utilities which do a gross volume of business of at least $250,000 per annum, or which have an outflow or inflow of goods, materials or services whether directly or indirectly across State lines, of $50,000 or more per annum."

The Board has conceded that it has not established jurisdiction under its gross volume standard. The Board's finding of jurisdiction is based upon its $50,000 inflow standard. The Board finds such standard is met by the inflow of goods in interstate commerce amounting to $28,337 and electric current inflow of $43,228.80. The dispute here is limited to the electric current inflow issue.

Kingsbury urges the General Counsel has failed to establish any reasonable basis for determining that a significant portion of the power that serves it orig-

1. The Board in its opinion states that it finds it unnecessary to pass upon the propriety of the exclusions allowed by the Examiner because it finds that its jurisdictional standards are otherwise met.

inated outside of the state. Kingsbury stresses that the evidence shows that the Fort Randall Dam is the closest power source and is connected with the heaviest lines; that electricity is likely to flow over the heaviest lines and come from the nearest source, and that the output at Fort Randall is adequate to take care of all South Dakota's needs. The Trial Examiner adopted such contention. The Board did not agree.

Kingsbury also urges that the Board did not give the findings of the Trial Examiner the weight to which they are entitled under the teaching of Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Section 10(f) of the Act requires us to accept the findings of the Board "if supported by substantial evidence on the record considered as a whole." The Examiner's findings are part of the record and should, of course, be considered. Universal Camera states: "The significance of his report, of course, depends largely on the importance of credibility in the particular case."

Here the divergent conclusions reached by the Examiner and the Board are not attributable to a difference in view as to the credibility of the witnesses. The Board could accept the testimony relied upon by the Examiner and reach the result that it did.

■ The Board in its opinion observes that power is generated at the various Missouri River dams as needed; that power cannot be stored; that power generated at each dam is influenced by the water level; that all power generated at any of the dams or purchased flows into a common, integrated transmission system for supplying power to the entire system; that it is not possible to trace the source of any given supply of power; and that the conclusion reasonably to be drawn is that the power derives from a complex of all generating systems operating as an integrated operation. The Board then states:

"In the light of the foregoing, we are of the opinion that the electric energy purchased by the Respondent, having been drawn from a reservoir or pool of power which was generated at various points over a 6-state area and carried from its several sources to the ultimate users over a multi-state transmission system was, by its very nature, a commodity in interstate commerce. As such, its cost is to be included in the computation of inflow for jurisdictional purposes. The addition of Respondent's 1960 power purchases of $43,228.80 to its $28,337 of direct and indirect inflow based upon purchases of materials brings the Respondent within the jurisdictional standard for power cooperatives established in the Sioux Valley case. We shall, accordingly, assert jurisdiction."

Such determination is supported by substantial evidence on the record as a whole. Under the facts of this case, the effect on commerce in practical reality would be the same regardless of the precise source of the power used.

■ Kingsbury suggests that the doctrine of de minimis non curat lex, mentioned in N. L. R. B. v. Fainblatt, 306 U.S. 601, 607, 59 S.Ct. 668, 672, 83 L.Ed. 1014, should be applied. The court there said:

"Examining the Act in the light of its purpose and of the circumstances in which it must be applied we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis."

Said case affords no support for Kingsbury's contention. The impact on interstate commerce here is substantial.

Since we have determined that the Board was justified in determining its self-imposed jurisdictional standards were met, we do not reach the Board's alternative argument to the effect that where, as here, the statutory require-

ments of jurisdiction are established, the extent to which jurisdiction will be exercised is a matter of administrative policy within the discretion of the Board, and that the Board's action will not be disturbed in the absence of showing an abuse of discretion. However, see N. L. R. B. v. Guernsey-Muskingum Elec. Co-op., supra; N. L. R. B. v. Pease Oil Co., 2 Cir., 279 F.2d 135.

The unfair labor practices—three in all—concern Kingsbury's six line employees who undertook to organize themselves and install the Union as their bargaining agent. Such efforts resulted in the certification of the Union as the bargaining agent.

The charge that Kingsbury unlawfully refused to bargain with the Union after its certification and upon proper request is established by substantial and uncontradicted evidence. Kingsbury concedes that it refused to bargain with the Union but states that such refusal was based upon its belief that the Board was without jurisdiction.

■ Good faith is not available as a defense to a charge of refusal to bargain where the refusal is based upon an erroneous view of the law. N. L. R. B. v. Keystone Floors, Inc., 3 Cir., 306 F.2d 560, 564; Old King Cole, Inc. v. N. L. R. B., 6 Cir., 260 F.2d 530, 532.

■ We have heretofore held the Board has jurisdiction. Hence, even if we assume that Kingsbury acted in good faith in refusing to bargain, the defense asserted is unavailable. The refusal to bargain upon reasonable request of the certified bargaining agent clearly constitutes a violation of § 8(a) (1) and (5) of the Act. Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125.

■ Kingsbury challenges the sufficiency of the evidence to support the Board's findings that it unlawfully interfered with its employees' Union activities in two respects: (1) By questioning the employees as to their Union activity and threatening to discharge some of them unless their activities were discontinued; and (2) by granting employees wage increases in order to defeat the Union. No purpose will be served by discussing in detail the conflicting evidence upon such issues. We have carefully examined the record. The Trial Examiner has discussed and fairly set out the evidence in detail in his report and made credibility findings. The Board has adopted such findings. While the evidence in support of the findings is neither overwhelming nor conclusive, and while we might have found otherwise had we been the fact finder, we cannot say that the findings made and complained of lack substantial evidentiary support.

Kingsbury's petition to set aside the Board's order is denied; the Board's petition for enforcement of its order will be granted.