**MONTGOMERY WARD & CO., Incorporated, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 18701.**

United States Court of Appeals
Eighth Circuit.

Nov. 30, 1967.

Narcisse A. Brown, Chicago, Ill., for petitioner; Daniel Walker, John P. Brundage, William F. McNally, Jack D. Brousard, Chicago, Ill., and Roy E. Breckenridge, of McMahon & Berger, St. Louis, Mo., on the brief.

Hans J. Lehmann, Atty., N. L. R. B., Washington, D. C., for respondent; Arnold Ordman, Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Gary Green, Atty., N. L. R. B., Washington, D. C., on the brief.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Montgomery Ward & Co. (Wards) has petitioned us for review of the order of the National Labor Relations Board adopting in its entirety the findings and conclusions and recommended order of the Trial Examiner determining Wards guilty of a number of violations of § 8(a) (1), National Labor Relations Act as amended (29 U.S.C.A. § 151 et seq.) and of a § 8(a) (5) violation.[1]

The Board has cross-petitioned for enforcement of its order in its entirety. Its decision and order are reported at 160 NLRB No. 137. Wards' store here involved is located in Bloomington, Minnesota, within this Circuit. Jurisdiction is vested in this court by § 10(e) and (f) of the Act.

The § 8(a) (1) Violations.

Wards urges that the Board erred in finding it guilty of any § 8(a) (1) violation. The complaint contains seven specifically described § 8(a) (1) violations. The Board found three of such violations were established, to wit: (1) Presence of supervisory personnel in a bowling alley in a portion of which a union organizational meeting was being held constituted illegal surveillance. (2) Coerced interrogation of employees by supervisory personnel. (3) Unlawful offer to promote Miller, a union supporter, to a supervisory position in another store for the purpose of removing him from the bargaining unit.

The Board found the other § 8(a) (1) violations specifically charged were not established.

When proper legal standards are applied, we find no substantial evidentiary support on the record considered as a whole to support the Board's findings of § 8(a) (1) violations under the teaching of Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

On the surveillance issue, the record discloses that four of Wards' supervisory employees held a meeting at a table in the beer parlor portion of an adjacent bowling alley for the purpose of discussing a performance report just received, on August 26, 1965. Such meetings were held there on both prior and subsequent occasions. The employees were having an organizational meeting at the same bowling alley on the same date and this

---

1. The union involved in this case is Local 149, of the Mail Order Retail Department Store and Warehouse Employees, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, which we will refer to in the opinion as the Union.

The Board also found Wards violated § 8(a) (3) by discharging employee Bratsch to discourage union activity. Such finding is not challenged by Wards in its petition for review but enforcement of such provision is included in the Board's cross-petition.

was known to the supervisors. The employees' meeting room was located some 150 feet distant from the place occupied by the supervisors. The supervisors did see and exchange greetings with some of the employees who passed by. The supervisors were at a public place where they had a right to be and were using the facilities for its intended purpose. Such activity does not constitute unlawful surveillance. See N. L. R. B. v. Monroe Auto Equip. Co., 8 Cir., 368 F.2d 975, 981; N. L. R. B. v. Davidson Rubber Co., 1 Cir., 305 F.2d 166, 170.

■■ The alleged coerced interrogation of employees took place in a nearby coffee shop where one of the supervisors held separate interviews with various employees over a cup of coffee. The employees were reminded of the election date and told to be sure to vote. The company's position opposing the union was discussed. Some employees were asked how they were going to vote but were not pressed. One employee was told, "I hate to see you get hurt." In one interview. the supervisor made a notation forecasting his view of how the individual employees would vote at the election. We have held that the right of free speech guaranteed by the First Amendment and § 8(c) of the Act should not be defeated by narrow or strained construction. N. L. R. B. v. Howard Quarries, Inc., 8 Cir., 362 F.2d 236, 240; N. L. R. B. v. William J. Burns Int'l Detective Agency, Inc., 8 Cir., 346 F.2d 897, 903. Free speech, guaranteed by § 8(c), is by the terms of such section permitted "if such expression contains no threat of reprisal or force or promise of benefit."

In N. L. R. B. v. Ralph Printing & Lithographing Co., 8 Cir., 379 F.2d 687, 690, we held interrogation of an employee "not in itself threatening or coercive, would not violate Section 8(a) (1) unless it were conducted against a background of employer hostility and discrimination towards unionization, such as would induce its employees a fear of reprisal for lawfully pursuing their union activities." See Dierks Forests, Inc. v.

N. L. R. B., 8 Cir. 385 F.2d 48 (November 16, 1967).

In our present case, the Board specifically rejected claims that discharge was threatened for union activity. The Board also rejected the contention that employees Miller and Wersal were constructively discharged by oppressive treatment occasioned by their union activity. Nothing said in the coffee shop conversation and interrogations can fairly be said to contain any threat of reprisal or force or promise of benefit.

■ Miller, a union supporter, was offered a position at a Wards station in a nearby small community where he would be the only mechanic. A vacancy existed in such shop. Miller was given a free choice of accepting or rejecting the position and turned down the offer after several days consideration. We find no substantial evidentiary basis for determining that the offer of the job had any relationship to Miller's union views.

■ Additionally the Examiner, upheld by the Board, determined Wards to be guilty of a number of § 8(a) (1) violations not charged in the complaint. The complaint charged specific violations and contained no catchall provision. The Board concedes that it attempted to prove additional violations not charged in the complaint and that no attempt was made to amend the complaint. The Administrative Procedure Act, 5 U.S.C.A. § 1004, and the Board's own rule, 29 C.F.R. § 102.15, require that the complaint apprise the parties proceeded against of the violations charged. "Evidence without a supporting allegation cannot serve as the basis of a determination of an unfair labor practice." "It offends elemental concepts of procedural due process to grant enforcement to a finding neither charged in the complaint nor litigated at the hearing." Engineers & Fabricators, Inc. v. N. L. R. B., 5 Cir., 376 F.2d 482, 485. See N. L. R. B. v. Majestic Weaving Co., 2 Cir., 355 F.2d 854, 861; N. L. R. B. v. Threads, Inc., 4 Cir., 308 F.2d 1, 9–10.

■ We recognize that National Labor Relations Board complaints do not

have to conform to the technicalities of common law pleadings and that in appropriate situations, issues fairly tried even if not specifically pleaded are to be considered. However, this is not such a case. The additional violations were not referred to in the General Counsel's opening statement. When evidence was first introduced on the non-charged violations, Wards objected on the ground the evidence was not within the scope of the issues pleaded. No attempt was made to amend and Wards, under the record here, cannot be held to have consented to the trial of issues not raised by the complaint. The Board erred in finding Wards guilty of unfair labor practices which were not properly charged.

### The § 8(a) (5) Violation.

The Board determined that Wards, by refusing to recognize the Union as the exclusive representative of its employees, engaged in an unfair labor practice within the meaning of § 8(a) (5) and (1), and ordered Wards upon request to bargain collectively with the Union. Wards contends the bargaining order has no basis in law or in fact, because (1) the request of the Union for recognition in an appropriate unit did not raise a duty to bargain and can not form the basis for a violation of § 8(a) (5); (2) General Counsel failed to prove that the cards were not obtained by misrepresentation; and (3) Wards' good faith doubt was abundantly proved and the finding that Wards sought delay to thwart organization is directly contrary to the record.

The Union held a final organizational meeting on August 26, 1965. On August 27, 1965, it wrote Wards a letter, signed by the Union business manager, reading:

"Due to the fact that we have the majority of the Application Cards from the employees of the Service Station at the Montgomery Ward Southtown Retail Store we are hereby requesting recognition as the Bargaining Agent for this unit."

On August 30, 1965, the Union filed a petition with the Regional Director calling for an election, stating that the bargaining unit consisted of all timecard employees of Wards service station unit excluding supervisory, secretarial and sales personnel, and stating the number in the unit to be twenty-seven. An election by secret ballot was ordered and held on November 5, 1965. Twenty-one employees were eligible to vote; twenty employees voted ten in favor of the union and ten against. Hence, the union lost the election.

The order for the election also determines the composition of the bargaining unit. Wards suggested that the unit should cover all employees of the entire store, not just those in the service station unit. Such suggestion was rejected. The order provides that the unit shall be the service station unit and eliminates from the timecard unit proposed by the Union two receiving clerks and two parts men. What became of the two additional employees which reduced the voting unit to twenty-one does not appear in the record. At the hearing before the Trial Examiner, the Union for the first time produced the application cards upon which it relied to establish majority representation. Cards from twelve of the twenty-one employees subsequently certified as eligible to vote at the election were offered.

In Fort Smith Broadcasting Co. v. N. L. R. B., 8 Cir., 341 F.2d 874, 880, we held:

"A bargaining representative which seeks to enforce its right concerning an employer under § 8(a) (5) must show that it has been designated by a majority of the employees, that the unit of representation is appropriate, and that there has been both a demand that the employer bargain and a refusal of recognition by the employer in the absence of any good faith doubt as to the union's majority status."

See N. L. R. B. v. Morris Novelty Co., 8 Cir., 378 F.2d 1000, 1006.

In N. L. R. B. v. Johnnie's Poultry Co., 8 Cir., 344 F.2d 617, we recognized that an employer has no vested right to insist that union representation be established

by a Board conducted election but we further held that an employer acting in good faith belief that a union lacked majority representation was not required to recognize and bargain with the union until such doubt was resolved. In that case as in the present case, no signed cards or other proof was given the employer to establish majority representation, such proof being first produced at the trial. We held that no reliance can be placed upon a document which has not been brought to the employer's attention.

In our present case, the demand letter, supra, states "we have the majority of the Application Cards from the employees." There is no representation that the Union has signed cards from a majority of the employees. The statement made in the letter could be true if only one employee had signed an application and the union had his card. The letter cannot be fairly construed as unambiguously claiming that the union represented a majority of the employees. The letter also refers to the employees as employees of the service station and nothing is said with respect to what was considered to be the appropriate unit. The appropriate unit issue was an issue in dispute between the parties and such issue was not resolved until the October 8 order fixing the election. The Union tendered Wards no proof with respect to either the number or specific members it was authorized to represent. Its petition for an election filed August 30 asserts a unit of twenty-seven members. Obviously the twelve cards produced at the hearing did not constitute a majority of the twenty-seven members the Union claimed constituted the appropriate unit at the time of its alleged demand.

The interval of not to exceed three days between the letter and the election petition was too short a period to allow the employer time to investigate and respond. This is particularly true as the record shows that union demands were routinely submitted by the Bloomington unit to Wards' central office at Chicago. We recognize that the filing of an election petition does not result in an automatic waiver of a bargaining demand. See Colson Corp. v. N. L. R. B., 8 Cir., 347 F.2d 128, 138.

In our present case, the absence of any offer to prove majority status in any manner by the Union and the absence of any follow-up upon its ambiguous demand affords the employer a reasonable basis for believing that the Union was not pressing its demand for recognition apart from its pending petition for an election.

As pointed out in *Fort Smith Broadcasting,* supra, there is a burden on the union to establish its majority status. Upon the record here, Wards upon the basis of its interrogation of its employees, its knowledge of unsuccessful prior attempts to organize the employees, and the absence of proof of union authorization, or an offer thereof, affords a basis for a reasonable doubt on the part of Wards that the union represented a majority of its employees.

We hold that the letter quoted did not constitute an adequate demand for recognition or for bargaining and that substantial evidence is lacking to support a finding that the Union has met the burden imposed upon it to establish that the employer's failure to recognize the Union was not based upon a good faith doubt that the Union represented a majority of its employees in an appropriate unit. Such determination makes it unnecessary for us to reach or consider other defenses urged to the § 8(a) (5) charge.

The § 8(a) (3) Violation as to Bratsch.

The Board by its order found employee Bratsch was discriminatorily discharged in violation of § 8(a) (3) and ordered him reinstated with back pay. Wards has not sought review of such order. Enforcement of this order is asked in the Board's cross-petition. We find no challenge by Wards to the enforcement of this part of the order. We find there is no issue before us with respect to the validity of the § 8(a) (3) portion of the order and that the Board is entitled to the enforcement of such portion of the order.

766

The Board's order is set aside in all respects except with respect to the determination as to Bratsch. The Board's cross-petition is enforced with respect to its provisions as to Bratsch. In all other respects, the relief sought by the cross-petition is denied.