**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BARDAHL OIL COMPANY, Respondent.**

**No. 19056.**

United States Court of Appeals
Eighth Circuit.

Aug. 9, 1968.

Edward E. Wall, Atty., N.L.R.B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N.L.R.B., on the briefs.

Alan I. Berger, of McMahon & Berger, St. Louis, Mo., for respondent, Murray L. Randall, St. Louis, Mo., on the brief.

Before VOGEL, Senior Circuit Judge, and BLACKMUN and LAY, Circuit Judges.

LAY, Circuit Judge.

In April 1966, four of the five salesmen of Bardahl Oil Company signed cards authorizing the Union as their bargaining agent. These cards were presented to the Company's Vice President with a demand for collective bargaining with the Union [1] as the exclusive agent of the salesmen. Upon request the Union's proposed contract and pension plan were delivered to the Company's representatives. This was done May 2, 1966. On May 18 the Union officials met with the Company's attorney who announced that the Company was going "to do away" with its salesmen, since the Company was going to inaugurate a new method of distribution and would no longer use salesmen. On May 23, after a secret ballot, the four salesmen went on strike. On June 23, Union representatives met with a new lawyer, one Murray Randall, who advised them that the reason that the Company would not recognize the Union was that the Company recognized the salesmen as

[1]. The Union is the Automotive, Petroleum and Allied Industries Employees Union, Local 618, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

"management trainees"[2] and not "employees" within the terminology of §§ 2(3), 8(a) (5) and 9(a) of the National Labor Relations Act as amended 29 U.S. C. §§ 152, 158, 159.

The Union filed unfair labor charges against the Company alleging violations of §§ 8(a) (5) and (1) of the Act by refusing to bargain collectively with the Union. The Examiner upheld the charge and ordered reinstatement of the striking employees, with back pay and interest from the date of application of reinstatement (if and when application is made and reinstatement is refused by the Company), as well as a direction for the Company to bargain with the Union. The Board adopted the Examiner's findings and order, and petitions for enforcement of its order.

We grant enforcement.

The Company denies the unfair practice charge under § 8(a) (5) upon the following grounds: (1) that the unit was inappropriate for bargaining; (2) notwithstanding the determination by the Board of the appropriateness of the unit, the Company is not guilty of unfair practice under § 8(a) (5) since it was not guilty of any other unfair practice under the Act and it did not deny recognition to delay or undermine Union representation, and otherwise held a good faith doubt of the appropriateness of the unit.

## THE "APPROPRIATE UNIT"

In the instant case the Company concedes the authenticity of the authorization cards and the majority status of the unit involved. The Company disputes that the salesmen involved here were "employees" under the Act. Its position is that the unit was inappropriate to represent these men, since in fact they were "management trainees" and thereby excluded from the bargaining unit.

It is clear that a § 8(a) (5) violation presumes a representative unit of "employees" and § 9(b) of the Act places exclusive jurisdiction in the Board to determine "the unit appropriate" for purposes of collective bargaining. The Board's responsibility was set forth in Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947):

> "The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion and the decision of the Board, if not final, is rarely to be disturbed."

The Board's determination should not be set aside unless it acted in a "capricious or arbitrary" manner. NLRB v. Hurley Co., 310 F.2d 158, 161 (8 Cir.1962); J. L. Brandeis & Sons v. NLRB, 142 F.2d 977 (8 Cir.1944).

In the present case the Examiner's findings with respect to the appropriateness of the unit as adopted by the Board were supported by substantial evidence: (1) the men were "route salesmen," who performed the same work and had the same duties as the non-striking salesman, Meyerkord; (2) the non-striking salesman was admittedly an employee; (3) all of the men were promised possible advancement in the Company's distributorship program, but this was speculative and no assurance was given to them regarding this; (4) prior to the hiring of the strikers, the Company circulated an ad[3] which spoke of "salesmen" not "trainees"; (5) the four salesmen were paid a salary plus commis-

---

2. The evidence showed this to be the Company's designation of their program in St. Louis. This is according to the minutes of a February 1966 Board of Directors Meeting of the Company.

3. The ad read:
   "We are looking for an aggressive salesman, who is ambitious and desires advancement. Our branch managers are chosen from this program. Monthly salary plus commission, plus vehicle and expenses, plus all company benefits. Experience in selling automotive field specialties preferred, but not essential. Age 25–45."

sion; (6) the men serviced accounts and each had a sales territory; (7) the Company representatives testified that their "branch trainee" program was divided in two phases: (a) phase one: selling and experience in the field; (b) phase two: salesmen with excellent sales records receive further training to become "sales managers"; and (8) fourteen men since 1956 came up through the ranks to become sales managers; however, no salesman had achieved this status since 1962, allegedly because they had voluntarily ceased their employment.

Appropriate to the Board's determination is the standard of whether the interests of the salesmen involved are more related to management than to employment. Cf. Packard Motor Car Co. v. NLRB, supra; Montgomery Ward & Co., Inc., 131 N.L.R.B. 1436, 1440. Here the men had a definite interest in the compensation and working conditions of all salesmen. There was no set training schedule of advancement—only a nebulous promise of graduation to "phase two" if they had excellent sales records. At the time of their organization they had little contact with management problems. And in this light we deem it of significance that under the Company's new distribution plans *all* salesmen were being discontinued. There was no contemplation to continue training "management personnel" as branch managers or for branch distributorships. Discontinuance of this program was apparently not difficult since this phase of the program had been inoperative since 1962.

■ Under the circumstances, we sustain the Board's finding that the salesmen were "employees" and not "management personnel," and that the unit was an appropriate one admittedly enjoying majority status to bargain.

## THE "GOOD FAITH" QUESTION

■ The Board determined that the Company's "good faith doubt" as to the appropriateness of the unit was not a defense to the § 8(a) (5) violation, under the circumstances existing here. Alternatively the Board found that the Company did not have a good faith doubt in refusing to bargain. We need not review the latter finding. We hold that the Company's refusal to bargain even though undertaken in the good faith belief that the salesmen were not "employees" and that the unit was therefore not appropriate is no defense to an unfair practice charge under § 8(a) (5).

■■ A good faith doubt is a defense to a § 8(a) (5) violation when the Company genuinely doubts that the unit has a majority status of the men. NLRB v. Arkansas Grain Corp., 390 F. 2d 824 (8 Cir.1968); Colson Corp. v. NLRB, 347 F.2d 128 (8 Cir.1965) ;[4] Jas. H. Matthews & Co. v. NLRB, 354 F.2d 432 (8 Cir.1965). Recognition of this defense is derived from the fact that in certain cases authorization cards may be totally unreliable evidence of a majority status. NLRB v. Arkansas Grain Corp., supra n. 4; NLRB v. Morris Novelty Co., Inc., 378 F.2d 1000 (8 Cir.1967). See Bauer Welding & Metal Fabricators v. NLRB, 358 F.2d 766 (8 Cir.1966). Under these circumstances a company may exercise its rights to have a representation proceeding for a determination of majority status under § 9(c) of the Act. An election can resolve such doubt by factual vote. If the election confirms the appropriate unit's majority status, an unfair practice charge might still be defended upon the company's assertion of its good faith doubt where the union originally resorted to an informal, but ambiguous demand for its recognition. And in those cases where the union de-

4. Judge Vogel said:
   "Where a union has obtained authorization cards signed by a majority of the employees in an appropriate unit, the employer violates § 8(a) (5) of the Act if he refuses to recognize and bargain with the union. The employer is protected from this charge *only* if he has a good faith doubt as to the reliability of the authorization cards." 347 F.2d at 135.

mand of recognition is not clear as to the composition of the unit the company has every right to question genuinely the fact relating to the claimed majority until it can reliably be determined. Cf. Montgomery Ward & Co., Inc. v. NLRB, 385 F.2d 760 (8 Cir.1967). Otherwise the employer would subject itself to unfair practice charges in violation of other employees' rights under § 7. NLRB v. Arkansas Grain Corp., supra; Colecraft Mfg. Co. v. NLRB, 385 F.2d 998, 1007 (2 Cir.1967). As Judge Matthes stated in NLRB v. Arkansas Grain Corp., supra at 829:

> "Section 7 of the Act accords employees the right to reject as well as accept the principle of collective bargaining through representatives of their own choice. In such a hypothetical situation Respondent's grant of exclusive bargaining status to a union selected by a minority of employees would have forced that union upon the nonconsenting majority, thereby interfering with the majority's right to refrain from self-organization. See International Ladies' Garment Workers' Union, AFL–CIO v. N.L.R.B., 366 U.S. 731, 81 S.Ct. 1603, 16 L.Ed.2d 762."

The same danger does not attach where the majority status is conceded and the unitary issue turns on the legal interpretation of the Act itself.

In the instant case, the appropriateness of the unit is challenged on the sole ground that the composition of the unit relates to "management trainees" and not "employees." As we have set forth, the Board determined otherwise, and under these circumstances the Company's motivation in refusing to bargain becomes irrelevant in the defense of the charge. To hold otherwise we would be required to read "scienter" into the language of § 8(a) (5) which otherwise does not exist.[5] In International Ladies' Garment Workers' Union, AFL–CIO v.

NLRB, 366 U.S. 731, 739, 81 S.Ct. 1603, 1608, 16 L.Ed.2d 762 (1961) speaking of a § 8(a) (2) violation, the United States Supreme Court said:

> "More need not be shown, for, even if mistakenly, the employees' rights have been invaded. It follows that prohibited conduct cannot be excused by a showing of good faith."

And Mr. Justice Clark concluded:

> "Assuming that an employer in good faith accepts or rejects a union claim of majority status, the validity of his decision may be tested in an unfair labor practice proceeding. If he is found to have erred in extending or withholding recognition, he is subject only to a remedial order requiring him to conform his conduct to the norms set out in the Act, as was the case here. No further penalty results."
> Id. at 740, 81 S.Ct. at 1609.

See also NLRB v. Burnup & Sims, Inc., 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964).

■ It is well settled that prohibited conduct, that is, practices lawfully proscribed, cannot be justified on a good faith misunderstanding of what the applicable law is or how it is to be applied. Taylor Forge & Pipe Works v. NLRB, 234 F.2d 227 (7 Cir.1956). Thus, we have held that a § 8(a) (5) violation is not justified even though the company had in good faith questioned the jurisdiction of the Board. See Kingsbury Elec. Co-op., Inc. v. NLRB, 319 F.2d 387 (8 Cir.1963).

This principle has been applied uniformly to unfair practice charges under § 8(a) (5) for refusal to bargain collectively. This is true even though there exists a good faith doubt as to the legal composition of the appropriate unit, as long as "appropriateness" is not related to the majority status or there does not exist some factual deficiency defining

---

5. The term "good faith" relating to collective bargaining under § 8(d) has no applicability to the present circumstanc-

es. Cf. NLRB v. American Nat'l Ins. Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952).

the unit to be recognized.[6] NLRB v. Sheridan Creations, Inc., 357 F.2d 245 (2 Cir.1966); NLRB v. Keystone Floors, Inc., 306 F.2d 560 (3 Cir.1962); United Aircraft Corp. v. NLRB, 333 F. 2d 819 (2 Cir.1964); Northern Virginia Steel Corp. v. NLRB, 300 F.2d 168, 175 (4 Cir.1962); Old King Cole, Inc. v. NLRB, 260 F.2d 530 (6 Cir.1958); NLRB v. My Store, Inc., 345 F.2d 494 (7 Cir.1965).

We think the Board's remedy reinstating the striking employees is entirely within its discretion and cannot in any way result in undue hardship to any of the parties involved. See Manley Transfer Co., Inc. v. NLRB, 390 F.2d 777 (8 Cir.1968); cf. NLRB v. Waukesha Lime & Stone Co., Inc., 343 F.2d 504 (7 Cir. 1965).

Finding the unit determination proper, the order of enforcement will be granted.

6. Respondent urges that the Board has held contrarily in two decisions: Clermont's Inc., 154 N.L.R.B. 1397 (1965) and Delight Bakery, Inc., 145 N.L.R.B. 893 (1964). Cf. also Webb Tractor & Equip. Co. & Lodge No. 1123, 167 N.L. R.B. No. 46 (Sept. 11, 1967). And the Company takes further refuge in NLRB v. Hannaford Bros. Co., 261 F.2d 638 (1 Cir. 1958) and NLRB v. Jackson Press, Inc., 201 F.2d 541 (7 Cir. 1953). However, all of these decisions relate the "appropriate unit" to the defense of good faith doubt either as to the majority status of the unit or an interrelated ambiguity. If the demand to bargain as to a defined unit is uncertain, the company can hardly determine majority status of the appropriate unit. However, where the dispute relates only to the size of the unit, and not as to which "unit" the union has in mind, the company must risk unfair practice charges if it is proven wrong. Cf. NLRB v. Burroughs Corp., 261 F.2d 463 (2 Cir. 1958). In each of the cases the company relied upon, absent Board certification, the company was in doubt as to some unresolved factual question of which it lacked knowledge concerning the unit involved. Cf. Montgomery Ward & Co., Inc., v. NLRB, 385 F.2d 760 (8 Cir. 1967). See also Mount Hope Finishing Co. v. NLRB, 211 F.2d 365 (4 Cir. 1954).

In Colecraft Mfg. Co. v. NLRB, 385 F. 2d 998 (2 Cir. 1967), the court absolved the company of a § 8(a) (5) violation

since there was a demand to bargain with too large a unit, thus an inappropriate unit. However, it is significant that the Board had determined the unit to be inappropriate. The court stated at 1007, n. 8:

"Of course, if the Board should find that an employer was incorrect and that the unit which a union demands is an appropriate unit, then the Board may order the employer to bargain with the union, if the Board finds that the refusal to bargain was not made upon grounds sufficient to support a good faith doubt. United Aircraft Corp. (Hamilton Standard Div.) v. N.L.R.B., 333 F.2d 819 (2d Cir. 1964)."

In Colecraft the units were defined but recognition of the same unit by both company and union disputed. On the other hand, in Jackson Press, supra, the company in good faith questioned the unit's majority status due to the ambiguous demand regarding the exact composition of the unit with which the union demanded bargaining. The Seventh Circuit recognized that it was not the responsibility of the company to resolve definition of the unit. The burden is on the union to define clearly the unit for which recognition is sought. We have recently adhered to this same principle in NLRB v. Arkansas Grain Corp., 390 F.2d 824 (8 Cir. 1968) and Montgomery Ward & Co., Inc. v. NLRB, 385 F.2d 760 (8 Cir. 1967).