NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TRANSPORT, INC., OF SOUTH DA-
KOTA, et al., Respondents.

No. 20702.

United States Court of Appeals,
Eighth Circuit.

Dec. 28, 1971.

Allen Feldman, Atty., N. L. R. B., Washington, D. C., for petitioner.

James W. Fahlgren, St. Paul, Minn., for respondents.

Before MATTHES, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The NLRB has applied to this Court pursuant to § 10(e) of the National Labor Relations Act for enforcement of its order which is reported with the Board's decision at 181 NLRB No. 69, 1970 CCH NLRB ¶21,691. The Board adopted the Trial Examiner's findings that respondents, who were held to be joint employers under the Act, had violated § 8(a) (1) of the Act for engaging in conduct that interfered with their employee's rights; and § 8(a) (3) and (1) for unlawful discharge of nine unfair labor practice strikers. Respondents do not contest this portion of the Board's order which requires respondents to cease and desist from such unfair labor practices and to offer to make whole and reinstate the unlawfully discharged strikers.

The Board also adopted the Trial Examiner's findings that respondents violated § 8(a) (5) by refusing upon request to bargain with the Union [1] which represented a majority of respondents' employees in a unit appropriate for collective bargaining. Finding that respondents' unlawful conduct (refusal to bargain and unfair labor practices) was of "such a nature as to have a lingering effect, which cannot be eliminated or neutralized by traditional remedies, and makes a fair election doubtful, if not impossible," the Board issued a bargaining order to the respondents. Respondents claim error by the Board in its finding of a § 8(a) (5) violation and resist enforcement of this portion of the Board's order.

Respondents, Transport, Inc., of South Dakota (Transport), A–1 Transport, Inc. (A–1) and Lloyd Ward, Inc. (Ward), were undisputedly joint employers for purposes of the Act. They carry on interstate motor transport operations while maintaining principal truck terminals at Sioux Falls and Watertown, South Dakota, with numerous subterminals located in South Dakota and one each in Iowa and Minnesota. Most of the employee-drivers worked out of the Sioux Falls or Watertown terminals, with the subterminals being primarily one-man operations.

On March 29, 1968, by letter to Transport, the Union claimed majority status in a unit appropriate for collective bargaining and requested recognition in a unit including "all drivers," but excluding office, clerical and professional employees.[2] Again on April 3, 1968, the Union requested recognition and offered to show majority status through signed authorization cards. At that time the Union also called a strike and a majority of the drivers participated in picketing the Sioux Falls and Watertown termi-

1. The Union is the General Drivers and Helpers Union, Local 749 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

2. A search of the record indicates that on March 29 the Union possessed valid authorization cards for only 8 of the 17 drivers who were ultimately determined to be properly included within the bargaining unit. By April 3, however, when the Union again asserted majority status and requested recognition, the Union had 13 valid authorization cards. Under these circumstances we need not consider the rule stated in N.L.R.B. v. Arkansas Grain Corp., 390 F.2d 824, 828 (CA8 1968), that "an employer, irrespective of his motivations, does not violate Section 8(a) (5) by refusing to recognize and bargain with a union, if in fact the union at the time of the demand for recognition does not represent a majority of the employees."

nals. Initially Transport's attorney insisted that he had no connection with A–1 or Ward and stated that he would take the Union representative's word for it that they had attained majority status. On April 8, 1968, however, Transport informed the Union by letter that it doubted the Union's majority status and for that reason must insist upon a Board-conducted election.[3]

At the hearing, before the Board and this Court respondents urge that they had no duty to recognize the Union for the reason that the request for recognition was made in an ambiguously and inadequately defined unit. They stress that the above and following facts force the conclusion that the request for recognition was fatally ambiguous; namely, (1) the Union's request contained no geographic references with respect to the two main terminals and numerous subterminals utilized by respondents; (2) no work stoppages, strikes or picketing occurred at any location other than the main terminals in Watertown and Sioux Falls, and (3) at the hearing the complaint filed by the General Counsel described the geographic scope of the appropriate unit as "all drivers of [respondents] at the Employers' Sioux Falls and Watertown, South Dakota terminals . . .." Respondents further assert that they were caught up in the dilemma described in Colecraft Mfg. Co. v. NLRB, 385 F.2d 998, 1007 (CA2 1967), where they would be violating the § 7 rights of employees who were improperly included in the unit and did not wish to be represented by the Union, but would be by virtue of their employer's acceptance of the Union's request to bargain. Their alternative was equally a Hobson's choice in that their refusal to bargain opened them up to a § 8(a) (5) charge and a bargaining order.

Our task is to view the record as a whole and to determine whether there is substantial evidence to support the Board's findings, taking care not to become "merely the judicial echo of the Board's conclusion" by setting aside the Board's determinations whenever they are not substantiated by the evidence or are arbitrary and capricious. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), NLRB v. Bardahl Oil Co., 399 F.2d 365 (CA8 1968). See also, NLRB v. United Insurance Company of America, 390 U. S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968).

When a demand for recognition of a Union as the bargaining agent for certain employees is made it is not the responsibility of the employer to resolve ambiguities regarding the composition of the unit sought to be represented. The burden is on the union to define clearly the unit for which recognition is sought and until the appropriate unit is defined the employer has no duty to bargain. NLRB v. Arkansas Grain Corp., 390 F.2d 824 (CA8 1968), Montgomery Ward & Co. v. NLRB, 385 F.2d 760 (CA8 1967) and Colecraft Mfg. Co. v. NLRB, 385 F.2d 998 (CA2 1967). See Morris, The Developing Labor Law, 259 (1971). Indeed, until the appropriate unit is defined it would be impossible for the employer to ascertain whether the union has attained majority status.

The respondents contended and the Trial Examiner and the Board so held that the "appropriate" unit consisted of all employee-drivers operating out of the main terminals and the subterminals.[4] Respondents assert that the Union's request for recognition respecting "all drivers" was fatally ambiguous in that they could not ascertain whether the request covered only drivers

---

3. The Union never sought an election. Transport did so but withdrew its § 8(b) (7) (C) charge when it was informed by the Board that such procedure was unavailable due to the pending § 8(a) (5) charge.

4. Respondents, however, attempted to expand the unit even further by including several owner-operators, supervisors, casual drivers, and other employee-drivers hired subsequent to the date of recognition.

at the main terminals or also those at the outlying subterminals. But at the time of the Union's request for recognition, the respondents refused to bargain solely for the reason that they doubted the Union's majority status. This would indicate that their claim is merely an afterthought. Assuming the sincerity of the respondents' argument, however, we cannot comprehend how a request to represent "all drivers" could have confused or misled respondents. See NLRB v. Dallas Concrete Co., 212 F.2d 98 (CA5 1954). If they were uncertain as to the scope of the unit requested or the Union's majority status they certainly had the opportunity to resolve such by a simple query of the Union representative and by examining the authorization cards offered by him. See Sakrete of Northern California, Inc. v. NLRB, 332 F.2d 902, 908 (CA9 1964) and NLRB v. Clearfield Cheese Co., 213 F.2d 70, 73 (CA3 1954). See also Texaco, Inc. v. NLRB, 436 F.2d 520, 523 (CA7 1971). In any event, the Trial Examiner and the Board agreed with respondents that the appropriate unit constituted "all drivers" at all locations, terminals and subterminals, and the Union clearly possessed valid authorization cards of a majority of these drivers at the time it requested recognition.

We conclude that the bargaining request sufficiently defined the appropriate bargaining unit and, since the Union possessed valid authorization cards indicating clear majority representation, there arose a duty to bargain in the respondents.[5] Their refusal to bargain, under these circumstances, placed respondents in violation of § 8(a) (5) and,

when considered along with the unfair labor practice violations found by the Board, certainly justify the Board's issuance of a bargaining order to respondents. See NLRB v. Gissel Packing Co., *supra*.

▪ We see no merit to respondents' contentions regarding the Board's findings of a § 8(a) (1) violation for unlawful discharge of John Jones on February, 4, 1968. The record as a whole indicates that there is substantial evidence supporting the Board's conclusion that Jones was discharged for engaging in activities protected under § 7 of the Act. Further, we see no impropriety by the Trial Examiner in permitting the General Counsel to amend the complaint to include the allegation concerning Jones. Section 10(b) specifically gives the Trial Examiner discretionary power to permit amendments and respondents were fully apprised by the original complaint that they were charged with violating § 8(a) (1) by interfering with employee rights protected under § 7. See North American Rockwell Corp. v. NLRB, 389 F.2d 866, 870 (CA10 1968) and NLRB v. Louisiana Mfg. Co., 374 F.2d 696, 704 (CA8 1967). See also NLRB v. William J. Burns Internat'l Detective Agency, Inc., 346 F.2d 897, 900 (CA8 1965). Additionally, we do not believe that respondents were the victims of surprise or prejudiced in any manner by the amendment. The Board properly ordered respondents to offer John Jones reinstatement and to make him whole for any loss of pay suffered.

Enforcement of the order is granted in full.

5. NLRB v. Gissel Packing Co., 395 U.S. 575, 595–598, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). See Morris, The Developing Labor Law, Chapter 10 (1971). Compare, NLRB v. Regal Aluminum, Inc., 436 F.2d 525, 528 (CA8 1971).