**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**COLVERT DAIRY PRODUCTS COMPANY, Respondent.**

No. 7090.

United States Court of Appeals Tenth Circuit.

May 7, 1963.

Rehearing Denied June 12, 1963.

Bratton, Circuit Judge, dissented in part.

Melvin J. Welles, Washington, D. C. (Stuart Rothman, Dominick L. Manoli, Marcel Mallet-Prevost, James C. Paras and Glen M. Bendixsen, Washington, D.

---

3. We do not reach the motions to dismiss filed in this court by appellee.

C., were with him on the brief), for petitioner.

Edward E. Soule, Oklahoma City (Louis A. Fischl, Ardmore, Okl., was with him on the brief), for respondent.

Before BRATTON, LEWIS and HILL, Circuit Judges.

LEWIS, Circuit Judge.

The National Labor Relations Board petitions this court under Sec. 10(e) of the National Labor Relations Act, 29 U.S.C.A. 160(e), for enforcement of its order of April 25, 1962, directing respondent to cease and desist from certain designated activities and requiring the usual affirmative requirements of posting. The order also carries a provision setting aside an election held August 2, 1961, and a remand of this aspect of the proceeding to Regional Director for the purpose of conducting a new election.

In issuing its order the Board adopted the findings and recommendations of the trial examiner who concluded that respondent had illegally affected the result of an election in violation of Sec. 8(a) (1) of the Act by coercive questioning of its employees and by the prohibited use of photographic equipment in pre-election activities. The respondent resists enforcement, asserting that the Board committed fundamental error in its consideration of the evidence; that the evidence is insufficient to premise findings of violation of Sec. 8(a) (1); and that the order of the Board requiring a new election should be set aside and declared void.

█ The proceedings before the Board were a consolidation of two cases, separately docketed and numbered. Case No. 16–CA–1532 charged respondent with committing unfair labor practices in its pre-election activities; Case No. 16–RC–2910 petitioned the Board to set aside the August 2, 1961, election. Since the same evidence was pertinent to the issues of both cases the matters were consolidated for hearing. The Board's present petition seeks enforcement of its order only as to the issues presented in Case No. 16–CA–1532. This court consequently lacks present jurisdiction to give consideration to respondent's contention that the Board erred in setting aside the results of the August 2 election and directing that a new election be held. And, for reasons that will become apparent, we do not give consideration to respondent's assertion that the evidence is insufficient to sustain the Board's findings that respondent committed unfair labor practices as charged and found in Case No. 16–RC–2910.

Early in 1961, Local 670 of the International Union of Operating Engineers, AFL-CIO, began a campaign to organize some 100 production and maintenance employees working at respondent's milk processing and distribution plant at Ardmore, Oklahoma. On April 25, 1961, having complied with required procedures, the union petitioned for a Board election and a date was set. Thereupon both respondent and the union engaged in extensive activities intended to influence the employees in the exercise of their votes. On May 31, July 18, and July 31, respondent's general manager read to the assembled employees prepared statements expressing management's opinion regarding the union's attempt to organize the plant. In the trial examiner's evidentiary findings, adopted in toto by the Board, the examiner bottoms his consideration of the credibility of the conflicting testimony of witnesses and the weight to be given to the evidence thus:

" * * * The statements read by Respondent's representatives to the assembled employees clearly conveyed to them Respondent's position succinctly stated in the sentence in the prepared statement read to the employees on May 31, 1961, that, 'We are convinced that there is no place for a union here and that all of you will be much better off without one.'

"The Examiner does not find that Respondent committed any unfair labor practices or engaged in conduct illegally affecting the results of the Board-conducted election by assembling the employees and reading

to them the prepared statements. However, this conduct is evidence of an antiunion animus on the part of Respondent and its officers. It will be considered as background evidence in appraising the conduct of Respondent alleged to constitute unfair labor practices and conduct illegally affecting the results of the Board election."

It seems patently clear that the trial examiner has taken the lawful statements of respondent, protected as they are by the First Amendment and specifically authorized by Section 8(c) of the Act,[1] as a basis authorizing an unfavorable inference in the appraisement of respondent's conduct and the credibility of its witnesses. In the case at bar the burden so imposed upon respondent may have been determinative of the ultimate issues and we hold it to be specific error to have so premised the findings of unfair labor practices. The record indicates that credibility and varying permissible inferences that might be drawn from the undisputed facts were of undeniable importance in reaching a result unfavorable to respondent. But in so holding we are not inferring that evidence of attitude is not material to or admissible in the determination of intent or the judging of credibility in labor cases. It often is. Nor, by referring to the error of the Board as being specific, do we intend an indication that the case at bar has particulars which limit our views to peculiar facts. We consider the case at bar to be typical.

 It has often been said that the general purpose of the National Labor Relations Act is to balance the interests of management, labor, unions and the public interest so as to accomplish harmony in furtherance of the welfare of each. In broad outlook a mutuality of interests exists but in the administration of the Act in specific cases the reality is a hard, and too often, bitter conflict of interest. The campaign immediately preceding a Board election is usually such a situation and the Act provides both affirmative rights and prohibited acts governing the conduct of both management and union. Each is accorded the right of persuasion and denied the use of coercion. But it would be unrealistic indeed to expect management to use words of conviction in an effort to persuade an employee to vote against unionization without the presence of "antiunion animus." In the matter of the election the management is, of course, antiunion. The union is equally anticompany. It is necessarily so. And hostility toward each other in such regard is not an unfair labor practice.

The Act (sec. 8(c)) specifically provides that privileged communications between employer and employee shall not be evidence of an unfair labor practice. To allow the privileged communications to become an instrument of destruction by indirection is to frustrate the right of free speech and the privilege of persuasion. Management cannot effectually attempt lawful persuasion if by so doing there is an ever-present penalty of "antiunion animus" for inherent in every campaign that is strenuously but lawfully waged is the expressed resistance to the views and claims of the opponent. The weakness of contra-position is often a premise of successful persuasion.

 In the case at bar the Board specifically acknowledges that the remarks of the general manager were privileged and lawful but nevertheless uses them as damaging background evidence in its consideration of the charges of violation of Sec. 8(a) (1). To do so, is, in the language of the Third Circuit, an "attempt to hoist by its own boot-straps, so to say, its own findings * * *." N. L. R. B. v. Rockwell Manufacturing Company, 271 F.2d 109. The right of

---

1. This section provides:
"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

management to freely express its views in opposition to unionization cannot be burdened by indirection and thus destroyed through technical rationalization. We will not enforce orders so premised.

Enforcement is denied.

BRATTON, Circuit Judge (concurring in part and dissenting in part).

I share with the majority the view that the court is presently without jurisdiction to review the proceedings involving the selection of a bargaining representative. And I also share with the majority the view that mere general statements of an official or supervising representative of an employer to its assembled employees to the effect that it disfavors the union as their bargaining representative, standing alone and without more, does not constitute an unfair labor practice.

But this case does not turn upon whether general statements of that kind, standing alone and without more, suffice to constitute an unfair labor practice. The boundaries of the case are not restricted to those narrow limits. In addition to making general statements indicating hostility to the union as bargaining agent for the employees, the statement was made in private conversation to an employee that if the union came in the employee stood a chance to lose benefits under the plan and program of the company. A day or two before the election a supervising representative of the company took pictures of representatives of the union passing out literature to employees of the company at points immediately adjacent to the plant of the company. And the representative also took a picture of an automobile belonging to a representative of the union which was parked near the property of the company. While the general statements of hostility to the union did not of themselves constitute an unfair labor practice, the trial examiner was warranted in taking them into consideration as background tending to lend corroborative support to the evidence that the statement was made to the employee and the pictures were taken, not innocently or in the abstract, but with the intent and purpose of producing coercive influence or pressure upon the employees in the selection of their bargaining representative.

I think the order should be enforced.