**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ARKANSAS GRAIN CORPORATION, Respondent.**

**No. 18848.**

United States Court of Appeals
Eighth Circuit.

April 3, 1968.

nold Ordman, Gen. Counsel, N.L.R.B., Dominick L. Manoli, Associate Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., and Glen M. Bendixsen, Atty., N.L.R.B., were on the brief with Mr. Shore.

B. S. Clark, of Smith, Williams, Friday & Bowen, Little Rock, Ark., for respondent and filed brief.

Before VAN OOSTERHOUT, Chief Jurge, MATTHES, Circuit Judge and HARRIS, Chief District Judge.

HARRIS, Chief District Judge.

The National Labor Relations Board petitions this Court for the enforcement of its order issued against the Arkansas Grain Corporation August 2, 1966, pursuant to Section 10(e) of the National Labor Relations Act, as amended, 29 U. S.C.A. §§ 151 et seq. The decision and order are reported in 160 NLRB No. 28. Jurisdiction is established.

The Board found that the respondent had violated:

(1) Section 8(a) (1) of the Act by coercively interrogating Ted Meek about the union and his union activities and those of other employees; and

(2) Section 8(a) (3) and (1) of the Act by discriminatorily discharging Employee Meek because of his activity in support of the union.[1]

The Trial Examiner, after a hearing and in consideration of the entire record, entered a decision and recommended an order of dismissal of all charges. The Board, after reviewing the rulings of the Trial Examiner made at the hearing, found no prejudicial error and the rulings were affirmed. The Trial Examiner concluded that the interrogation by the respondent, through its agent Ragsdale, was such as to *not* interfere with, restrain or coerce its employees in the exercise of any of the rights guaranteed in Section 7 of the Act, and that the general counsel failed to meet the burden of proof necessary for a finding of a discriminatory discharge under the Act of

Harold B. Shore, Atty., N.L.R.B., Washington, D. C., for petitioner; Ar-

---

1. United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO.

Employee Meek. The Board reversed the decision of the Trial Examiner and held the actions of the respondent to be violative of the Act.

Arkansas Grain Corporation is engaged in the business of processing and selling soy bean oil and meal. Its Helena division at Helena, Arkansas, was established in 1963. From outlying plants in the state soy beans are received from the farmers and shipped to the Helena processing plant. The beans are received by the Corporation's terminal elevators for drying and storing. Subsequently they are processed into soy bean oil and soy bean meal. Most of the product is exported.

The alleged unfair labor practices resulted from activities to organize the employees for union representation at the Helena division plant. A successful election was held on April 23, 1965. The plant at that time had a total of ninety employees, seventy-five of whom were eligible to vote in the election.

The actions upon which the asserted charges are brought against the respondent began in January and continued through the election. Only one employee, Ted Meek, was involved. There is no evidence that any attempt was made to interrogate any of the other employees during the period leading up to and including the election.[2] The Board appears to have based its decision upon the uncorroborated testimony of Employee Meek, the Board's principal witness, and inferences from the record.

Respondent's principal witnesses were Stephen Ragsdale, a foreman, and Frank McDonald, superintendent. Only Rags-

dale, for the respondent, was involved with the alleged interrogation and discharge. He was Meek's foreman.[3] There were conflicts in the testimony of Meek and Ragsdale. Meek credibly testified that Ragsdale had asked him about union activities some 8 or 10 times during the period preceding the April 23, 1965, election.[4] Even though he answered the inquiries untruthfully, except on one occasion he stated there was no coercion, threats of reprisal, intimidation or promises.

There are two issues for determination: First, did the respondent, through its agent Ragsdale, unlawfully interrogate its Employee Meek; and second, was respondent's discharge of Meek and its refusal to reinstate him unlawful?

■ The question for the Court is whether there was substantial testimony to support the Board's findings. The law applicable has been stated by this Court and other courts numerous times and appears to be well settled. Acme Products, Inc. v. N.L.R.B., 389 F.2d 104 (8 Cir., February 13, 1968); Universal Camera Corporation v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The findings of the Board must be supported by substantial evidence on the record as a whole.

■ The findings and conclusions of the Trial Examiner are a necessary part of the record. The Administrative Procedure Act provides that "all decisions, including initial, recommended, and tentative decisions, are a part of the record * * * ". 5 U.S.C.A. § 557(c). The provisions of this Act for judicial review are construed to be applicable to

---

2. Ted Meek and Roger Posey, another employee, were observers at the election. The record fails to disclose any attempted interrogation or reprisal toward or against Posey.

3. The Board adopted the Trial Examiner's finding that the remarks of Supervisor Ashcraft to Meek were not violative of Section 8(a)(1) of the Act. Meek and Ragsdale were good friends. They visited each other's home socially, had hunted together many times, and were in school

together. Meek stated that he was not frightened by any of Ragsdale's questions and that he told him untruths only because he did not want Ragsdale to know about union activity.

4. Meek could only recall three specific instances in which Ragsdale interrogated him. He could not recall any specific inquiries as to the other instances claimed and said they were generally about the same.

the National Labor Relations Act. The Supreme Court in the *Universal Camera* case stated the rule as to the weight to be given to the Examiner's findings, as follows:

"We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial'." 340 U.S. 474, 496, 71 S.Ct. 456, 469.

■ The Trial Examiner has an important function, which was provided by Congress in its wisdom in the passage of the Act. His duties are independent from the administrative responsibility. It is clear, however, that the Board is not conclusively bound by his findings. Neither is the Court bound by the Board's rejection of a Trial Examiner's findings.

In *Universal Camera* the Court of Appeals deemed itself bound by the Board's rejection of the Examiner's findings. The Supreme Court succinctly stated, "they are not". The Taft-Hartley Act provides that "the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive". 29 U.S.C.A. § 160(e).

■ As to the charge of Section 8(a) (1) violation. It is a well settled rule of law that the right of free speech guaranteed by the First Amendment should not be defeated by a narrow or strained construction. Montgomery Ward & Co. v. N.L.R.B., 8 Cir., 385 F.2d 760; N.L.R.B. v. Howard Quarries, Inc., 362 F.2d 236, 240 (8 Cir., 1966). Section 8(c) of the Act provides that free speech is permitted *"if such expression contains no threat of reprisal or force or promise of benefit"*. (Emphasis supplied)

■ Even if there were any display of antiunion hostility during the course of an organizational campaign, which is not present in this case, it would not constitute an unfair labor practice. N.L.R.B. v. Howard Quarries, Inc., supra; Fort Smith Broadcasting Company v. N.L.R.B., 341 F.2d 874, 879 (8 Cir., 1965). Likewise, a statement that the union would not be advantageous would not constitute an unfair labor practice; Surprenant Manufacturing Company v. N.L.R.B., 341 F.2d 756 (6 Cir., 1965); and it is to be noted that Ragsdale did not go so far in his inquiries in this case.

■ The Board found the comments of Ragsdale to indicate antiunion animus and from unwarranted inferences that the interrogations were not merely coincidental, but rather deliberate and coercive. It is a well recognized rule of law that otherwise legal acts cannot be the basis for an antiunion animus. N.L.R.B. v. Colvert Dairy Products Company, 317 F.2d 44 (10 Cir., 1963).

■ From a close examination of the record we are unable to give the inferences the credence as to satisfy the burden of supporting a Section 8(a) (1) violation. We not only fail to find evidence to support the contention of coercion and interference, but we fail to find that any employee was in any way restricted or limited in participation in the election.

■ In N.L.R.B. v. Ralph Printing and Lithographing Company, 379 F.2d 687, 690 (8 Cir., 1967), this Court held

that interrogation, not in itself threatening or coercive, "would not violate Section 8(a) (1) unless it were conducted against a background of employer hostility and discrimination towards unionization, such as would induce in its employees a fear of reprisal for lawfully pursuing their union activities". This rule was restated by Judge Van Oosterhout, speaking for the Court, in Montgomery Ward & Co. v. N.L.R.B., 385 F.2d 760, 763 (8 Cir., 1967). See Dierks Forests, Inc. v. N.L.R.B., 385 F.2d 48 (8 Cir., 1967).

■ It is, of course, within the purview of the Board to draw reasonable inferences from the evidence, but substantial evidentiary basis must exist to support such inferences; they cannot be based purely on speculation. Acme Products, Inc. v. N.L.R.B., supra.

We are convinced from a careful analysis of the entire record that the Trial Examiner based his decision on sound reasons and no reasonable basis exists to hold otherwise. To adopt the Board's view would require acceptance of inferences unsupported by substantial evidence on the record as a whole.

■ With reference to 8(a) (3) and (1) violations. On the next day following the election, April 23, 1965, Employee Meek reported to work at 3 p. m. He and Foreman Ragsdale engaged in conversation. Mr. Ragsdale itemized the duties he expected of Mr. Meek. They were instructions of Meek's duties, which he had not at all times observed in the past. This dereliction of duties is borne out by the testimony that on two previous occasions management officials took preliminary steps to discharge Meek for his actions, but relented upon Meek's promise to do better. As pointed out by the Board, Meek's past record as an employee may have been less than satisfactory. He was belligerent at times, high-tempered, absent without good cause and uncooperative.

The plant was closed for good reason on April 24, 1965. Meek was not called to work, but two other employees were called to perform certain duties. On April 26 Meek reported to work at 3 p. m. Again the Foreman had difficulty with him in the performance of his duties.

It was most important in the processing of soy beans that the dryer pressure be correctly maintained and the moisture content be kept to a certain optimum point. Ragsdale complained of Meek that he was not maintaining adequate pressure and proper moisture content. He reported Meek's attitude to General Manager Higginbothom, who cautioned Ragsdale to "keep things on an even keel. We have the problem about the union; however, see that he does his job".

Among his duties, Meek was responsible for checking the dryer pressure and moisture content each hour and to record the result. Ragsdale credibly testified that he watched before and after each hour beginning early in the evening and Meek failed to check either the pressure or moisture content. Beginning at 9 p. m. Ragsdale watched uninterruptedly until about 10:30 p. m., and at no time did he observe that Meek checked the gauge. On inspection of the records which Meek kept, it was found that the dryer pressure reading was recorded for each hour commencing at 4 p. m., through 10 p. m. This resulted in the discharge of Meek by Ragsdale.

The unlawfulness of the discharge is dependent upon the uncorroborated testimony of Meek. The record of the pressure recordings by Meek, introduced into evidence, corroborated the testimony of Ragsdale. It showed an unvarying pressure between 7 p. m. and 10 p. m., although the moisture content was still below the optimum point. The basic question is whether Meek was discharged primarily because of his union activities or his failure to perform his duties and for falsifying the records. The Board concludes that Meek was dis-

charged in retaliation of his union activities.[5]

We do not agree.

The Trial Examiner credited Ragsdale's version of the discharge incident and concluded that Meek's discharge was caused by his failure on April 26 to read and properly record the dryer pressure, his falsification of the record, and in light of his previous record of employment.

It has been repeatedly recognized that the credibility of witnesses is an issue to be determined by the Trial Examiner and Board as the trier of facts. N.L.R.B. v. Barberton Plastics Products, Inc., 354 F.2d 66 (6 Cir., 1965); N.L.R.B. v. Nelson Mfg. Co., 6 Cir., 326 F.2d 397; N.L.R.B. v. Bendix Corp., 6 Cir., 299 F. 2d 308, cert. den. 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed.2d 65. However, it has also been held that, under circumstances similar to those here presented, the uncorroborated testimony of an untrustworthy and interested witness, who stands to profit from a back pay award, may be held under such facts and circumstances not to constitute substantial evidence on the record considered as a whole. N.L.R.B. v. Barberton Plastics Products, Inc., supra; and cases cited therein.

It is well established that:

"Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' * * *." N.L. R.B. v. Columbian Enameling &

Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660.

In this context, under similar circumstances Judge Mehaffy, speaking for the Court, in Fort Smith Broadcasting Company v. N.L.R.B., 341 F.2d 874, 879 (8 Cir., 1965), pointed out:

"An employer has the right to discharge an employee for good reason, bad reason or no reason, absent discrimination."

The respondent had a right to discharge Meek for inefficiency and failure to perform his duties so long as the discharge was not motivated in whole or in part because of his union activities. The Supreme Court has held:

"The act does not interfere with the normal exercise of the right of the employer to select its employees or to discharge them. The employer may not, under cover of that right, intimidate or coerce its employees with respect to their self-organization and representation, and, on the other hand, the Board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised for other reasons than such intimidation and coercion." N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45–46, 57 S.Ct. 615, 628, 81 L.Ed. 893.

On the question of causation, it is well settled that, the fact that an employee participated in activities on behalf of his union does not prevent his discharge for cause. N.L.R.B. v. Dixie Terminal Co., 6 Cir., 210 F.2d 538, 540, cert. den. 347 U.S. 1015, 74 S.Ct. 871, 98 L.Ed. 1138.

From a careful analysis of the entire record we cannot escape the conclusion

5. The Examiner included in his decision: "Meek's record as an employee left much to be desired. His failure to record steam pressure was the last straw in an accumulation of various dissatisfactions with Meek's behavior. Whether or not the summary discharge was appropriate under the circumstances need not be decided here. The only issue is whether Meek's discharge was motivated, at least in part, by union activities. There is,

however, a paucity of evidence to support such a conclusion. Admittedly Ragsdale knew that Meek was a union adherent; Ragsdale knew that Meek had acted as a union observer at the election. It is significant, however, that there is no suggestion of any discrimination practiced by the respondent against Roger Posey, the other union observer. *Nor does the record indicate any antiunion attitude on the part of Ragsdale or anyone else.*"

that the Board has failed in its burden of proving that respondent violated Section 8(a) (3) and (1) by discriminatorily discharging its employee Ted Meek.

In summary, by applying proper legal standards, we find no substantial proof on the record to support the Board's findings when considered as a whole of violations of Section 8(a) (1) or Section 8(a) (3) and (1) of the Act. We decline to enforce the Board's order on both charges.

The decision of the Board is reversed. Enforcement of the Board's order is denied.